In re William S. EDWARDS d/b/a Edwards Excavating.

Patricia A. TAVELLA

v.

William S. EDWARDS.

Civ. A. No. 3:93CV–732(JAC).

United States District Court, D. Connecticut.

July 6, 1993.

Jamie K. Gerard, Westport, CT, for appellant.

Andrew F. Fink, Westport, CT, for appellee.

## RULING ON BANKRUPTCY APPEAL

JOSÉ A. CABRANES, Chief Judge:

Pending before the court is an appeal from an order of the United States Bankruptcy Court (Alan H.W. Shiff, *Judge* ) granting the motion for summary judgment of the appellee Patricia A. Tavella filed in an adversary proceeding in the bankruptcy case of the appellant/debtor William S. Edwards.

## BACKGROUND

Tavella and Edwards, formerly husband and wife, obtained a divorce in 1990 after a one-day trial in the Superior Court of the State of Connecticut for the Judicial District of Stamford/Norwalk (Stanley Novak, *Judge* ). The Connecticut court's November 8, 1990 memorandum of decision[1] provided

---

1. The November 8, 1990 memorandum of decision of the Connecticut court ("Memorandum of Decision"), together with the transcript of the proceedings before that court ("Transcript") are

that certain joint debts (the "Debts") of the couple were assumed by Edwards and that Edwards was to hold Tavella harmless from the Debts. The Debts were described by Judge Novak as "in the nature of alimony and support."[2]

In 1991, Edwards filed a petition for protection under Chapter 7 of the United States Bankruptcy Code.[3] Tavella then initiated an adversary proceeding in the bankruptcy court which sought to determine whether the Debts were dischargeable by Edwards.[4] Tavella moved for summary judgment in the adversary proceeding and the bankruptcy court granted summary judgment for Tavella on March 10, 1993.[5] This appeal followed.

### DISCUSSION

■ A district court reviews a bankruptcy court's conclusions of law *de novo*. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir.1990); *In re Coated Sales, Inc.*, 147 B.R. 842, 844 (S.D.N.Y.1992).

#### A.

■ There are exceptions to the general rule that an individual's debts are dischargeable in bankruptcy, which are enumerated in Section 523 of the Code. *See Forsdick v. Turgeon*, 812 F.2d 801, 802 (2d Cir.1987). In particular, subsection (a)(5)(B) of that statute provides in pertinent part that the Code does not discharge an individual debtor from any debt

to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record . . . or property settlement agreement, but not to the extent that such debt includes a liability designated as alimony, maintenance, or support, unless such liability is *actually in the nature of alimony, maintenance, or support.*

(emphasis supplied). In other words, in determining whether an obligation arising out of a divorce decree or separation agreement is dischargeable under the Code, the court must "look beyond the label attached to an obligation" to examine its true nature. *In re Gianakas*, 917 F.2d 759, 762 (3d Cir.1990); *see also* 3 Collier on Bankruptcy ¶ 523.15 (15th ed. 1990). Obligations intended for support and maintenance of a spouse are in the nature of alimony and are not dischargeable, in contrast to obligations which merely divide property which are dischargeable. *In re Coil*, 680 F.2d 1170, 1171 (7th Cir.1982).

In her motion for summary judgment filed in the bankruptcy court, Tavella contended that because the Debts were actually "in the nature of alimony, maintenance or support," they were not dischargeable by Edwards. Edwards disagreed, arguing that the hold-harmless provision of the divorce decree was not intended as alimony, maintenance or support, despite the Connecticut court's use of the phrase "in the nature of alimony, mainte-

---

a part of the Designation of Record and Statement of Issues on Appeal (filed Apr. 7, 1993) (Doc. 3) ("the "Record").

**2.** Paragraph 7 of the Memorandum of Decision states in its entirety that

[t]he defendant shall be responsible for the liabilities scheduled on his financial affidavit dated November 7, 1990. He shall also be responsible for the payment of the G. Fox debt of $250.00 and the American Express debt of $1400.00 that are listed on the plaintiff's financial affidavit. The defendant shall indemnify and hold harmless the plaintiff for any liability as to these past obligations so that she may properly care for herself. This indemnification is necessary for the plaintiff's continued economic welfare and accordingly, the defendant's obligation in this respect is in the nature of alimony and support.

**3.** 11 U.S.C. § 101, *et seq.* (the "Code").

**4.** In a bankruptcy case pursuant to Chapter 7, a debtor's assets are (with certain exceptions) liquidated; the proceeds are distributed to the debtor's creditors. *See* 11 U.S.C. §§ 541, 726. The debtor, however, keeps his future income, which means that his future earnings are excluded from the assets which may be distributed. *See* 11 U.S.C. § 541(a)(6). After that distribution occurs, the debtor's debts are discharged—that is, he need not pay them. *See* 11 U.S.C. § 727. Certain debts, for example, those attributable to taxes or those for money or property obtained by fraud, however, are not dischargeable. *See* 11 U.S.C. § 523.

**5.** *See* Memorandum and Order on Plaintiff's Motion for Summary Judgment (filed March 10, 1993) ("Memorandum and Order"), 151 B.R. 19.

nance or support" in its order. The bankruptcy court found that the factual issues essential for a determination of whether the hold-harmless obligations were in the nature of alimony, maintenance or support for purposes of Section 523(a)(5)(B) had been previously raised, litigated and decided in the Connecticut court.[6] Accordingly, Judge Shiff granted summary judgment for Tavella, finding that the doctrine of collateral estoppel barred relitigation of this issue in the bankruptcy court.

On appeal, Edwards argues that the doctrine of collateral estoppel is not applicable to the issue of dischargeability of the Debts and that, on the merits of the issue, Edwards is entitled to discharge the Debts because they were not "in the nature of alimony, maintenance or support" within the meaning of Section 523(a)(5)(B).

### B.

■ "Although it is true that what constitutes alimony, maintenance or support, will be determined under the bankruptcy laws, not State law," *Forsdick,* 812 F.2d at 802, "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Grogan v. Garner,* 498 U.S. 279, 284–85, n. 11, 111 S.Ct. 654, 658, n. 11, 112 L.Ed.2d 755 (1991). The doctrine of collateral estoppel, or issue preclusion, "bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding." *Metromedia Co. v. Fugazy,* 983 F.2d 350, 365 (2d Cir.1992). For collateral estoppel to apply

(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

6. *See* Memorandum and Order 151 B.R. at 22.

7. Memorandum and Order 151 B.R. at 22.

8. The bankruptcy court relied on *Wood v. Wood,* 165 Conn. 777, 345 A.2d 5 (1974) and *Carter v.*

*Gelb v. Royal Globe Insurance Company,* 798 F.2d 38, 44 (2d Cir.1986) (Newman, J.).

We begin with the question of whether the issue before the bankruptcy court was the same as the issue previously addressed by the Connecticut court. Issues are "not identical if the legal standards governing their resolution are significantly different." *Metromedia,* 983 F.2d at 365.

■ Under Section 523(a)(5)(B), an obligation is "actually in the nature of alimony, maintenance or support" when it is intended to provide support for the spouse, rather than as an equalization of property rights. *See, e.g., In re Gianakas,* 917 F.2d at 762; *In re Coil,* 680 F.2d at 1171. Alimony awards under Connecticut law are governed by Conn.Gen.Stat. § 46b–82, which provides in pertinent part that

[i]n determining whether alimony should be awarded, and the duration and amount of the award ... the court ... *shall* consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties.

(emphasis supplied). Accordingly, it is clear that the basis for awarding alimony under Connecticut law differs from the standard for determining whether an award is "in the nature of alimony" under the Code—the Connecticut law determination must be partly based on factors other than the spouse's need for support, such as the cause of the dissolution of marriage. Although the bankruptcy court determined that "the purpose of alimony in Connecticut is to meet a spouse's continuing duty of support," [7] the cases relied upon by the court in support of that proposition were decided with reference to a Connecticut alimony statute that has since been repealed.[8] The fact that the predecessor

*Carter,* 138 B.R. 356 (Bankr.D.Conn.1992). In *Wood,* the Connecticut Supreme Court addressed Conn.Gen.Stat. § 46–21, which was repealed pursuant to 1973 Conn.Pub.Act 73–373, § 43. *Carter,* in turn, relied solely upon *Wood* as authority for the proposition that alimony under

statute to Conn.Gen.Stat. § 46b–82 may have defined alimony in a manner virtually identical to the definition of "in the nature of alimony, maintenance and support" under § 523(a)(5)(B) can have no bearing on the instant case. It is Section 46b–82 which is applicable here and that statute clearly defines alimony in a fashion which raises issues different from those raised under the Code.

In its Memorandum of Decision, the Connecticut Superior Court explicitly stated that it had "carefully considered the criteria set forth in Connecticut General Statutes sections 46b–62,[9] 46b–81[10] and 46b–82 in reaching the decisions reflected in the orders that follow." The Connecticut court also found that "the cause of the breakdown of this marital relationship was the behavior of the defendant [Edwards] towards the plaintiff [Tavella]."[11] While the Connecticut court did employ the language suggested by Tavella's counsel[12] indicating that the hold-harmless provision was intended to provide for Tavella's welfare, this does not contradict the Superior court's prior statement that the court had considered all of the necessary factors under Conn.Gen.Stat. § 46b–82 in formulating its order—including, presumably, the fact that it had found Edwards at fault. It is arguable that the Connecticut court may have intended to foreclose the possibility that the hold-harmless provisions would be discharged in bankruptcy, but inasmuch as Connecticut law clearly obligated that court to apply a standard that differs from that applicable under the Code, it cannot be said that the issue before the Connecticut court was the same as that raised by Tavella in the bankruptcy court. Accordingly, it cannot be said that Edwards was collaterally estopped from raising the issue of dischargeability of the Debts in the bankruptcy court.

Connecticut law is awarded for the purpose of providing support for the spouse.

**9.** Conn.Gen.Stat. § 46b–62 provides for the award of attorney's fees in certain actions.

**10.** Conn.Gen.Stat. § 46b–81 provides for the assignment of property arising out of an action for annulment or dissolution of a marriage or for legal separation.

*CONCLUSION*

Upon a review of the record, and for the reasons stated above, the order of the bankruptcy court is REVERSED and this case is REMANDED to the bankruptcy court for consideration of the merits of Tavella's motion for summary judgment in a manner consistent with this ruling.

It is so ordered.

**11.** Memorandum and Decision at 1.

**12.** The Transcript indicates that the issue of the dischargeability of the hold-harmless provisions was raised before Judge Novak by Tavella's counsel. *See* Record, Transcript at 206–213.