In re William C. BIELUCH, Jr., Debtor.

Patricia COOK, Plaintiff,

v.

William C. BIELUCH, Jr., Defendant.

Bankruptcy No. 92–52664.
Adversary No. 92–5290.

United States Bankruptcy Court,
D. Connecticut.

April 8, 1998.

George J. Markley, Fairfield, CT, for Plaintiff.

Thomas L. Kanasky, Jr., Bridgeport, CT, for Debtor–Defendant.

### MEMORANDUM OF DECISION ON COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523(a)(5)

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

In this adversary proceeding the Court is called upon to make a determination under Bankruptcy Code Section 523(a)(5) of the dischargeability of an award of counsel fees arising in domestic relations litigation. The determination turns on whether the award was intended to be, and had the effect of being, in the nature of alimony, maintenance or support of the Debtor's former spouse, or rather, was in the nature of a sanction or punishment of the Debtor–Defendant for his fault in the underlying marital dissolution and related contests.

### II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).

### III. PROCEDURAL HISTORY

This bankruptcy case was commenced by the Debtor's filing of a voluntary petition, and this Court's simultaneous order for relief, under Chapter 7 of the United States Bankruptcy Code on August 5, 1992. Thereafter, the Plaintiff instituted this adversary proceeding through the filing of a Complaint (hereafter, the "Complaint") seeking a determination and declaration of the dischargeability of a certain obligation for the payment of counsel fees (hereafter, the "Counsel Fee Debt") imposed upon the Debtor–Defendant by a domestic relations judgment entered in the Connecticut Superior Court (per the Honorable Edgar W. Bassick, III) on March 11, 1992 (judgment hereafter referred to as the "Decree").

When issuing the Decree, Judge Bassick ruled that the Counsel Fee Award was "in the nature of alimony and ... nondischargeable in bankruptcy." As a result, the Plaintiff sought summary judgment (Doc. I.D. No. 23) in this adversary proceeding based upon the alleged preclusive effect of that ruling. However, this Court denied the Plaintiff's

request for summary judgment in primary reliance upon the opinion of then-District Judge José A. Cabranes in *Tavella v. Edwards (In re Edwards)*, 162 B.R. 83 (D.Conn. 1993).[1]

On October 14, 1997, the Defendant filed his own motion for summary judgment (hereafter, the "Motion") (Doc. I.D. No. 69), supported by several exhibits. The Plaintiff filed a memorandum of law in response to the Motion (hereafter, the "Response") (Doc. I.D. No. 82), which objected to the Defendant's Motion and requested summary judgment in the Plaintiff's favor. Accordingly, the Court regards the Motion and the Response as cross-motions for summary judgment. Nevertheless, because the parties have agreed that all evidence they desired to present at trial is now before the Court without objection in connection with the cross motions for summary judgment, the Court will not endeavor to apply summary judgment standards, but rather, will consider this proceeding as if submitted to the court after a trial on the merits.

The evidence submitted—all documentary in nature[2]—consists of the following: (i) their divorce trial transcript; (ii) the parties' respective Superior Court Financial Affidavits; (iii) the Plaintiff's Superior Court Claims for Relief dated November 29, 1991 (hereafter, the "Claims for Relief"); (iv) the Plaintiff's Superior Court Brief dated December 16, 1991 (hereafter, the "Brief"); (v) the Decree; and (vi) Judge Bassick's Memorandum of Decision in support of the Decree (hereafter, the "Memorandum"). From these materials, the Court makes the following factual findings.

### IV. FACTUAL BACKGROUND

The Plaintiff was, at all times relevant hereto, a self-employed clinical psychologist.

The Defendant was, at all times relevant hereto, an attorney at law engaged in private practice. The parties were married November 9, 1984, and divorce proceedings were instituted by the Plaintiff in June of 1989. Their relatively brief union produced no children.

As reported by Judge Bassick in his Memorandum, the parties' marital relationship was stormy. Judge Bassick found that the Defendant, "under the influence of alcohol, .... physically and sexually abused the plaintiff." *Memorandum* at 3. He observed that the Defendant "has a temper....", that the Plaintiff "fears for her safety ..." and that "the police were called to the plaintiff's Darien home on five occasions...." *Id.* Indeed it is obvious that the Defendant's antipathy for the Plaintiff even permeated the courtroom, causing Judge Bassick to observe that "[e]ven upon the trial, the defendant could not help but strike out against the plaintiff claiming she had caused his genital herpes.... The evidence, even if it were true, was unnecessary." *Id.*

The trial before Judge Bassick consumed all or part of more than a dozen separate days. The trial proceeding, while arising in the context of a dissolution of marriage, primarily concerned a title dispute over two parcels of improved real property, including the residence of the Plaintiff. These properties were purportedly the subject of two successive transfers by quitclaim deed. The first deed—purporting to evidence a conveyance from the Plaintiff to the Defendant—was alleged by the Plaintiff, and found by Judge Bassick, to be a forgery.[3]

At the time of the Decree, the Plaintiff's income and expenses exceeded that of the Defendant, and the Defendant requested an

---

1.  That Order (Doc. I.D. No. 48) held that because Judge Bassick did not assess the nature of the counsel fee award under the federal standard of § 523(a)(5), one of the required elements for the application of collateral estoppel—an identity of issues between the prior and present actions— was not met. Even if Judge Bassick had been applying a federal standard, it is questionable whether the federal (bankruptcy) issue was justiciable before him, in that no Title 11 case involving the Defendant was pending at the time.

2.  All documents were attached as Exhibits to the Motion and Response. The parties did not desire to present testimonial evidence.

3.  The second quitclaim deed was from the Defendant to a friend, one Frederick F. Moryl of Chicago.

award of periodic alimony. Judge Bassick denied that request, stating that he had—

> considered that the defendant has his own law practice in Darien, that he is currently living with another as a guest in that other individual's home and sharing a bedroom with her, and that *he is at fault for the breakdown of the marriage.* With the trial now behind him, he should be able to return to his practice and be able to support himself without the ncessity [sic] of financial assistance from the plaintiff. While the court recognizes that he has consequential indebtedness, this apparently is of his own doing.

*Memorandum* at 10 (emphasis supplied).

In her Superior Court Complaint, the Plaintiff did not seek a formal award of alimony, although in her Claims for Relief she requested that "a lump sum of $80,-000.00 . . . ."—presumably for counsel fees—"be ordered as period alimony so as to be a continuing obligation of defendant Bieluch should he once again have himself adjudicated a bankrupt." *Claims for Relief* at 6. She argued further in her Brief that—

> [d]efendant Bieluch has been through bankruptcy before, and, from his financial affidavit and his testimony, appears to have few, if any, assets at this time. Under the circumstances, rather than asking for a lump sum payment from defendant Bieluch, plaintiff believes that she should be awarded the sum of $80,000.00 *to be paid as period alimony (and thus be an obligation which would survive bankruptcy),* with the period alimony being nonmodifiable as to both amount and duration, and *payable whether or not the plaintiff should remarry.*

*Brief* at 15 (emphasis supplied). Judge Bassick apparently agreed with the substance of the Plaintiff's argument, concluding in his Memorandum as follows:

> The court finds a fair and reasonable value of the services rendered by the plaintiff's counsel to the extent the court has observed those services to be $50,000.00. The court finds that, based upon the total financial resources of the parties, the denial of an award of counsel fees to the plaintiff would undermine its financial orders.

*Fitzgerald v. Fitzgerald,* 190 Conn. 26, 34, 459 A.2d 498 (1983). *In making its determination in this regard the court has considered the provisions of § 46b–62 of the General Statutes and the factors of § 46b–82 of the General Statutes. Such an order is in the nature of alimony and is nondischargeable in bankruptcy. In re Birdseye,* 548 F.2d 321, 323, 325 (10th Cir.1977) (a case involving Connecticut law and the Bridgeport law firm of Brody and Brody and that firm's claim of attorney's fees sought to be discharged in a bankruptcy proceeding in the State of Colorado.)

*Memorandum* at 9–10 (emphasis supplied). The Decree orders the Defendant to "pay to the plaintiff as a contribution to her counsel fees the sum of $50,000.00 payable in an amount of $500.00 per month for a period of one hundred (100) months commencing April 1, 1992, and payable on the first day of each month thereafter until fully paid. *Th[e] payment should be made regardless of the death of either of the parties or the plaintiff's remarriage." Decree* at 7 (emphasis supplied).

## IV. DISCUSSION

### A. Statutory Prerequisites.

A bankruptcy discharge has the following effects, *inter alia:*

> (1) [it] voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . of . . . title [11] . . . [and]

> (2) [it] operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor. . . .

11 U.S.C. § 524(a) (1993)

A debtor in a Chapter 7 case receives a discharge of debts under the authority of Section 727(b) of the Bankruptcy Code, which provides, in relevant part, that "*[e]xcept as provided in section 523* of this title, a discharge . . . discharges the debtor from all debts that arose before the date of the order

for relief under this chapter...." (emphasis supplied).

This adversary proceeding seeks to determine the non-dischargeability of a domestic relations award under the standards of Bankruptcy Code Section 523(a)(5), which provides in pertinent part as follows:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

> > (5) to a spouse ... [or] former spouse ... of the debtor ... for alimony to, maintenance for, or support of such spouse ... in connection with a ... divorce decree or other order of a court of record ... but not to the extent that—

> > (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise...; or

> > (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

> \*   \*   \*   \*   \*   \*

11 U.S.C. § 523(a) (1993).

## B. Burden of Proof.

■ The party opposing the bankruptcy discharge of a particular debt bears the burden of proving the requirements of the relevant subsection of Section 523(a) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287–88, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991); *In re Thirtyacre*, 36 F.3d 697 (7th Cir.1994). Despite this general rule, the Plaintiff argues that there exists within the Second Circuit a "rebuttable presumption" of nondischargeability for awards of domestic relations counsel fees. Although the cases cited in the Plaintiff's Response provide her argument with some superficial support, this Court does not read those cases as authority for the proposition urged by the Plaintiff.

Accordingly, this Court will not utilize a presumption of nondischargeability in this case.

The root of Plaintiff's misapprehension of the law in this area springs from a misplaced reliance on the Second Circuit's decision in *Pauley v. Spong*, 661 F.2d 6 (2d Cir.1981). The Second Circuit panel, *inter alia*[4], endorsed the finding of the Bankruptcy Court below that the attorneys fee award in that case was in the nature of alimony or support. *Spong*, 661 F.2d at 8–9. The language of that endorsement—including the clause highlighted by the Plaintiff, to wit—"An award of attorney's fees may be essential to a spouse's ability to sue or defend a matrimonial action and thus a necessary under the law...."—is read by the Plaintiff to constitute a generalized characterization of domestic relations counsel fee awards as nondischargeable. That reading of *Spong* apparently has been adopted by at least one bankruptcy court. *Kavanakudiyil v. Kavanakudiyil (In re Kavanakudiyil)*, 143 B.R. 598, 603–64 (Bankr. S.D.N.Y.1992).

The Court in *Kavanakudiyil*, echoed by the Plaintiff here, seemed to assume that *Spong* was answering the question of whether counsel fee awards *are* in the nature of alimony, maintenance or support, and therefore nondischargeable. Quite to the contrary, this Court reads *Spong* to have answered the question of whether a domestic relations counsel fee award *could ever be* held non-dischargeable under Section 523(a)(5).[5] This view is in fact supported by the language of several of the cases cited by the Plaintiff in her argument for the application of a rebuttable presumption. *Marcus, Ollman & Kommer v. Pierce*, 198 B.R. 665, 666 (S.D.N.Y.1996) (citing *Spong* as having "established in this circuit that obligations in the nature of alimony and support *may* include the duty to pay attorneys' fees to a former spouse in connection with a divorce proceeding...." (emphasis supplied)); *Pe-*

---

4. The primary issue in *Spong* was whether the fact that counsel fees were payable to the spouse's attorney, as opposed to the spouse herself, rendered those fees dischargeable as beyond the scope of Section 523(a)(5).

5. Although an affirmative answer to this question may seem obvious today in view of the development of the law since the Bankruptcy Code's inception, the question may have been more compelling in 1981 given the curious language and structure of Section 523(a)(5). *See* fn. 8, *infra*.

ters v. Hennenhoeffer (In re Peters), 133 B.R. 291, 295 (S.D.N.Y.1991) (Goettel, J.) (citing Spong for the proposition that "[c]ourts are in general agreement that obligations in the nature of alimony, maintenance and support *may* include the duty to pay attorneys' fees incurred by the former spouse in connection with a divorce proceeding. . . ." (emphasis supplied)) [6]; In re Newman, 196 B.R. 700, 704 (Bankr.S.D.N.Y.1996) (observing that Spong "found that an award of legal fees *could be* in the nature of support." (emphasis supplied)).

Spong must also be understood in its historical context. Decided in 1981, Spong was one of the Second Circuit's earliest decisions under the then relatively new Bankruptcy Code. Under the predecessor Bankruptcy Act's domestic relations discharge exclusion, courts usually looked to State law to determine whether a particular debt was in the nature of alimony or support. See Spong, 661 F.2d at 8 (citing, inter alia, DuBroff v. Steingesser, 602 F.2d 36, 37 (2d Cir.1979)). By contrast, the Bankruptcy Code compels a Bankruptcy Court to look directly to the now well-developed federal bankruptcy law to resolve the question of whether an obligation is "alimony, maintenance or support" within the meaning of Section 523(a)(5). See Brody v. Brody (In re Brody), 3 F.3d 35, 39 (2d Cir.1993). Although certain aspects of state law may be relevant to that question, they are not dispositive. See id. The nature of Brody's statement of the primacy of federal law in this area highlights the subtle yet significant maturation of the law under the Code since Spong. Compare Brody, 3 F.3d at 39 (enunciating strongly the primacy of federal law under the Bankruptcy Code) with Spong, 661 F.2d at 8–9 ("accepting"—as if for sake of argument only—the primacy of

federal law under the Code, while defending the utilization of state law). Recognizing Spong's reliance on state law, it is clear that that Court was not, and could not have been, attempting to characterize all counsel fee awards under federal bankruptcy law. Spong cites exclusively to New York law when stating that a "husband's obligation to support his wife by providing her with the necessaries of life according to his station has been long recognized as an 'unescapable duty', both at common law and by statute." While that statement may still describe the state of the law in New York [7], it is clear that in Connecticut the presumption of "a husband's duty" has been supplanted statutorily by a more enlightened understanding of the status of women. C.G.S. §§ 46b–82, 46b–83; see Grinold v. Grinold, 32 Conn.Supp. 225, 348 A.2d 32 (Super.Ct.1975) ("Connecticut's modernized statute governing the award of alimony has in effect repealed the common-law obligation of the husband to furnish support to his wife. . . . The neutral principle of circumstantial necessity has replaced the anachronistic view which held alimony to be an automatic, vested right of the divorced wife").

For the foregoing reasons it is appropriate that the Plaintiff be required to meet the general burden of persuasion in this case without the aid of an initial presumption in her favor.

### C. Analysis of Domestic Relations Obligations under Section 523(a)(5).

When assessing the dischargeability of prepetition debts under Section 523(a)(5), the task of the Bankruptcy Judge is to determine whether such debts are "actually in the nature of alimony, maintenance, or support." [8]

---

6. The fee award at issue in Peters was for the guardian ad litem of a child of the debtor. Such an award is, almost by definition, "support" for the child, since minor children—as opposed to spouses—rarely, if ever, possess independent means of support.

7. All of the progeny of Spong cited in the Plaintiff's Response are cases in which the counsel fee awards at issue were based in New York law. Thus, those courts justifiably looked to Spong for guidance as to the characterization of a New York award of counsel fees.

8. While courts have applied this "actually in the nature of" standard to all domestic relations awards regardless of their label or designation in the underlying decree, a literal reading of Section 523(a)(5) might lead one to conclude that it limits the dischargeability of only obligations literally denominated "alimony", "maintenance" or "support" by a decree. This is apparent because the "actually in the nature of" language appears only in subsection (B) (pertaining only to liabilities denominated "alimony", "maintenance" or "support"). Yet while the language of Section 523(a)(5) is curious, these concerns are

There is no dispute here that the award of counsel fees constitutes a prepetition debt. Thus, the only substantive inquiry required in assessing the dischargeability of the Counsel Fee Debt is whether such debt. is in the "nature of" alimony, maintenance or support.

■ .As noted *supra,* although a bankruptcy judge may consult state law for guidance as to whether a debt is actually in the nature of alimony, maintenance or support, the determination is necessarily one premised upon federal bankruptcy law. *See Brody,* 3 F.3d at 39.. This federal law analysis is an analytically distinct exercise from that which a Connecticut state court employs in formulating awards of alimony or support. *See Edwards, supra.*

■ A debt to a former spouse is "in the nature of alimony, maintenance or support" to the extent that it is intended, and in fact functions, to provide support to the former spouse. Traditionally, courts of bankruptcy jurisdiction have focused on whether a given obligation either (i) addressed the unequal earning capacities of the parties—suggesting a nondischargeable "support" purpose, or (ii) allocated the marital assets—suggesting a dischargeable property division.[9] In the instance of a decree issued under the law of a state such as Connecticut, where fault may be ascribed and form the basis for financial awards in a marital dissolution, *see, e.g.,* Connecticut General Statutes (hereafter cited as "C.G.S.") 46b–82 (1991) (referencing "the causes of the dissolution of the marriage" as a proper consideration in awarding alimony), the Bankruptcy Court must consider whether the divorce court's award was animated by a possible third purpose: punishment of the party at fault. *See Edwards,* 162 B.R. at 85–86. An award intended as a punitive measure would be dischargeable under Section 523(a)(5) since it does not serve a support purpose.

■ In sum, a Bankruptcy Court must assess the intention and effect of a state court's domestic relations award to determine whether that award is well calculated to further the support or maintenance of the former spouse, or whether it effectuates some other purpose, such as a division of property or the punishment of one spouse for fault in the underlying dissolution. *See id.* These determinations of dischargeability can only be made on a case-by-case, issue-by-issue basis. Among the factors traditionally utilized by courts in divining the actual nature of an obligation imposed in a divorce decree are the following: (1) the label given the obligation in the decree, (2) .the form and placement of the obligation in the decree, (3) whether the obligation terminates on death, remarriage, etc., (4) the economic disparity between the parties, (5) the length of the marriage, (6) the presence of minor children, (7) whether a traditional support award would have been -adequate in the absence of the obligation in question, (8) the age, employability, and educational level of the parties, and (9) the financial resources, actual or potential, of each spouse.

■ Consideration of such factors must occur in a tightly circumscribed evidentiary context. As Chief Bankruptcy Judge Alan H.W. Shiff observed in the *Edwards* case on remand, initial recourse must be made to the language of the divorce decree. *In re Edwards,* 172 B.R. 505, 508 (Bankr.D.Conn. 1994). If the intention and effect of the award is not clear from the decree itself, then the Bankruptcy Court may "look beyond the four corners of the decree to the *evidence before [the state] court ....* " *Id.* (emphasis supplied).

### D. Analysis of Dischargeability of Counsel Fee Debt.

■ Against the foregoing background of fact and legal authority the Court now turns

---

not implicated in the case at bar since this Court finds and concludes that the Memorandum and Decree "designate" the Counsel Fee Debt as alimony, bringing it within the literal purview of Section 523(a)(5)(B).

**9.** The Bankruptcy Reform Act of 1994 added to the Bankruptcy Code new subsection 523(a)(15),

which, under a set of equitable standards, allows for the non-dischargeability of *non*-support domestic relations obligations. This amendment is applicable only to bankruptcy cases filed after October 22, 1994, and therefore does not provide a rule of decision for the instant adversary proceeding.

to analyze the dischargeability of the obligation at issue—the Counsel Fee Debt.

In Connecticut, allowances of counsel fees in marital dissolution actions are made under the authority of C.G.S. § 46b–62 (1992), which provides in relevant part as follows:

"... the court may order either spouse ... to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b–82."

As noted *supra*, among the criteria set out in C.G.S. § 46b–82 is the "cause" of, or fault in, the marital breakdown. Thus, in theory, the Counsel Fee Award could have been intended by Judge Bassick to serve either as a punishment or a form of support. In assessing the nature of the Counsel Fee Award, this Court observes that the award has two material components or aspects. First, there is the debt itself—$50,000.00, payable in installments of $500.00 over a period of 100 months commencing April 1, 1992 (hereafter referred to as the "Core Award"). Second, there are the terms of the debt's "survival", namely, that payments "shall be made regardless of the death of either of the parties or the plaintiff's remarriage" (hereafter referred to as the "Survival Terms"). Since it appears to the Court that these components may have been animated by differing judicial purposes, it is appropriate that they be separately analyzed.

### 1. The Core Award.

The Plaintiff has a substantial burden with respect to the Core Award since several of the traditional factors weigh against a support purpose. Initially, the Court observes that the parties' marriage was of relatively brief duration, and produced no children. Also, Judge Bassick did not order traditional period alimony, stating explicitly that "[t]here shall be no alimony to either of the parties."

However, the basis for the denial of traditional alimony was the fact that the Plaintiff, in apparent recognition of the disparity in the parties' income, did not formally request it. Nonetheless, as counsel fees mounted in connection with the divorce action, the Plaintiff determined that her personal budget

could not absorb these legal costs, and she sought the support of the Defendant by requesting an award of fees, payable as period alimony. Judge Bassick granted the request for fees; and while he did not *denominate* the Counsel Fee Debt as an award of periodic alimony, he *characterized* it as such by pronouncing it "in the nature of alimony." He further concluded that "based upon the total financial resources of the parties, the denial of an award of counsel fees to the plaintiff would undermine its financial orders." Judge Bassick understood that the magnitude of the Plaintiff's potential legal bill would severely undermine her somewhat precarious personal budget. He also appreciated the fact that the Defendant had few personal expenses, owing to his status as "houseguest" with a third party, and that he had the potential for a substantially increased income due to his training and experience as an attorney.

In sum, this Court concludes that the Plaintiff has met her burden to demonstrate that the Core Award was in the nature of alimony because it was reasonably intended, and would in fact have functioned, to support her, if the Defendant had been making the required installment payments.

### 2. The Survival Terms.

The Survival Terms provide that payment of the Counsel Fee Debt "shall be made regardless of the death of either of the parties or the plaintiff's remarriage." It is apparent that the Survival Terms were intended by Judge Bassick to serve a *punitive*, as opposed to a *support*, purpose. Even in the unlikely event that Judge Bassick intended the Survival Terms to aid the Plaintiff's support, in most respects they fail profoundly to achieve that effect.

Most awards of alimony abate upon the recipient's remarriage or romantic cohabitation. By requiring payment of the Counsel Fee Debt regardless of the Plaintiff's remarriage, Judge Bassick has taken the award outside the bounds of traditional periodic alimony.

Admittedly, payment of the Counsel Fee Debt regardless of the death of the *Defen-*

*dant*—*i.e.* requiring payment from the Defendant's decedent estate—might indeed serve a support purpose since its effect is potentially to maintain support of the Plaintiff beyond the time of the Defendant's death. However, requiring payment regardless of the death of the *Plaintiff* does not aid her support; it merely enriches her probate estate for the benefit of her heirs.[10]

As a whole, the Survival Terms evidence a non-support purpose. It is likely that Judge Bassick, while intending to provide alimony-like support for the Plaintiff through the Core Award, also acted to punish the Defendant by giving the Counsel Fee Debt the "sting" of survival beyond circumstances where traditional alimony would abate. Even if Judge Bassick did not harbor this intent, it is plain to this Court that the Survival Terms have the unmistakable effect of punishing the Defendant. Accordingly, the Plaintiff has not met her burden of persuading this Court that the Survival Terms were in the nature of alimony, maintenance or support, except as to the Term requiring payment regardless of the death of the *Defendant*.

### V. CONCLUSION

For the foregoing reasons, the Counsel Fee Debt is not dischargeable in the Defendant's present bankruptcy case, *provided that* in the event the Plaintiff is remarried and/or dies at any time after April 1, 1992, then all installment payments of the Counsel Fee Debt due after the date of the earlier of her remarriage or death shall be dischargeable in this bankruptcy case. A judgment shall enter accordingly.

### JUDGMENT

This proceeding having come before the Court upon the stipulated evidence of the parties, and the Court having this day entered its Memorandum of Decision on Complaint to Determine Dischargeability of Debts Under 11 U.S.C. § 523(a)(5), in accordance with which

IT IS HEREBY ORDERED that judgment shall enter in this adversary proceeding as follows:

The counsel fee debt described in the Plaintiff's Complaint is not dischargeable in the Defendant's present bankruptcy case, *provided that* in the event the Plaintiff is remarried and/or dies at any time after April 1, 1992, then all installment payments of the Counsel Fee Debt due after the debt of the earlier of her remarriage or death shall be dischargeable in this bankruptcy case.

---

10. The transfer by operation of law of the Counsel Fee Debt from the Plaintiff to her estate upon her death, creates a scenario closely analogous to that provided by Section 523(a)(5)(A), which preserves the dischargeability of alimony debts if they are "assigned" by the non-debtor spouse to another entity.