In re Angelo VARRONE, Debtor.

No. 98–34596.

United States Bankruptcy Court,
D. Connecticut.

Nov. 16, 2001.

Eugene S. Melchionne, Attorney at Law, Waterbury, CT, for Movant–Debtor.

George G. Mowad, St. John, Scappini, Lombard & Stevens, Waterbury, CT, for Respondent.

## MEMORANDUM OF DECISION ON MOTION TO REOPEN AND FOR CONTEMPT

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Before the Court at this time is the above-captioned Debtor's *Motion for Order Reopening Case and Holding Creditor in Contempt for Violating Discharge Order* (hereafter, "Discharge Motion"). The Discharge Motion came on for hearing in this Court on June 27, 2001, at which time the Court received the arguments of counsel for the Movant–Debtor and Debra Ann Varrone—the ex-wife of the Debtor (hereafter, the "Respondent"). The only evidence presented to the Court was a *Judg-*

*ment* and incorporated *Stipulation,* each dated January 22, 1998, (hereafter collectively, the "Decree") entered by the Connecticut Superior Court in the divorce action between the Debtor and Respondent, bearing Docket No. FA 97–0138729, Judicial District of Waterbury. The Decree was received and considered by this Court without objection.

Among the relevant terms of the Stipulation are the following paragraphs:

9. Neither party shall pay the other an award of lump sum or periodic alimony except as outlined in paragraph 10 hereof. Each party understands that, except for the award of lump sum alimony as provided for in paragraph 10 hereof, both will be forever barred in the future from seeking an award of alimony.

10. The [husband] shall pay the [wife], as lump sum alimony, the sum of Ten Thousand ($10,000.00) Dollars within thirty (30) days of the date of the decree.

11. The [husband] shall convey to the [wife] by way of Qualified Domestic Relations Order the sum of Twenty Thousand ($20,000.00) Dollars from his pension funds. The [husband] shall bear the expense for preparation and delivery of the Q.D.R.O.

It is undisputed that the Debtor has made the $10,000.00 lump sum alimony payment referenced in Paragraph 10 of the Stipulation, but has not complied with the requirements of Paragraph 11 thereof (hereafter, the "Pension Award").

This Chapter 7 bankruptcy case was commenced on October 16, 1998 (hereafter, the "Petition Date") through the Debtor's filing of a voluntary petition and this Court's simultaneous order for relief. A discharge of debts entered in the Debtor's bankruptcy case by Order dated March 2, 1999 (hereafter, the "Discharge Order"). During the pendency of the case, no complaints to determine the dischargeability of debts were filed by any party.[1] This case was closed on March 10, 1999.

On or about February 27, 2001, the Respondent filed a motion in the Connecticut Superior Court seeking to have the Debtor held in contempt for his failure to convey pension funds as required by the Pension Award (hereafter, "State Court Proceedings"). In response to that action the Debtor filed the Discharge Motion, seeking to reopen his bankruptcy case to have this Court determine that the Discharge Order relieved him from obligation under the Pension Award, and to hold the Respondent in contempt for violating the Discharge Order.

## II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant contested matter by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(I), (O).

---

1. Specifically, the Respondent did not seek relief under Section 523(a)(15), which allows, under a set of equitable standards, for the non-dischargeability of *non*-support domestic relations obligations commonly referred to as "property division" debts. The time for commencing a proceeding pursuant to Section 523(a)(15) has long since passed. *See* 11 U.S.C. § 523(c); Fed. R. Bank. P. 4007(c). This Court need not opine on whether the dischargeability of the obligations in dispute in this matter would have been resolved differently if timely pursued under Section 523(a)(15).

## III. DISCUSSION

### A. Case Reopening.

■ Bankruptcy Code Section 350(b) provides that a bankruptcy case may be reopened "... to accord relief to the debtor, or for other cause." The essential relief which the Debtor now seeks—a determination of debt dischargeability—is pursued in good faith, and provides an appropriate basis for the reopening of his case.

### B. Debt Dischargeability.

A bankruptcy discharge has the following effects, *inter alia:*

(1) [it] voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 ... of .. title [11] ... [and]

(2) [it] operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor....

11 U.S.C. § 524(a) (1998).

A debtor in a Chapter 7 case receives a discharge of debts under the authority of Section 727(b) of the Bankruptcy Code, which provides, in relevant part, that *"[e]xcept as provided in section 523* of this title, a discharge ... discharges the debtor from all *debts* that *arose before the date of the order for relief* under this chapter...."* (emphasis supplied).

This matter raises the issue of the dischargeability—under the standards of Bankruptcy Code Section 523(a)(5)—of an alleged debt created by the Pension Award. That Code Section provides in pertinent part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(5) to a spouse...[or] former spouse... of the debtor... for alimony to, maintenance for, or support of such spouse... in connection with a ... divorce decree or other order of a court of record ... but not to the extent that—

\*       \*       \*       \*       \*       \*

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

11 U.S.C § 523(a)(5) (1998).

■ The party opposing the bankruptcy discharge of a particular debt bears the burden of proving by a preponderance of the evidence that the requirements of Section 523(a)(5) have been met. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Thirtyacre,* 36 F.3d 697 (7th Cir.1994).

■ In cases brought under Section 523(a)(5), the task of the Bankruptcy Judge is to determine with respect to the contested obligation whether that obligation (i) constitutes a "debt", (ii) "arose" prior to the Petition Date, and (iii) is "actually in the nature of alimony, maintenance, or support." In the present case there is no dispute that the alleged Pension Award obligation arose prior to the Petition Date. It is also clear to this Court that the alleged Pension Award obligation was *not* in the "nature of" alimony, maintenance or support.

■ An obligation is in the nature of alimony, maintenance or support when it is intended to provide support for the spouse. Therefore, assuming for the moment that all obligations at issue in this proceeding are pre-petition "debts", this Court's task

under Section 523(a)(5) is to determine whether the Connecticut Superior Court intended those obligations to be for the support or maintenance of the former spouse, or to effect some other purpose, such as a division of property or as punishment for fault leading to the underlying dissolution. *See In re Edwards,* 162 B.R. 83 (D.Conn.1993) (Cabranes, J.). To get at this distinction courts of bankruptcy jurisdiction have traditionally focused on whether a given obligation was intended by the State court to either (i) address the unequal earning capacities of the parties—suggesting a nondischargeable "support" purpose, or (ii) allocate the marital assets—suggesting a dischargeable property division.

■ Determinations of dischargeability under Section 523(a)(5) can only be made on a case-by-case basis. Among the factors traditionally utilized by courts in divining the actual nature of an obligation imposed in a divorce decree are the following: (i) the label given the obligation in the decree, (ii) the form and placement of the obligation in the decree, (iii) whether the obligation terminates on death, remarriage, etc., (iv) the economic disparity between the parties, (v) the length of the marriage, (vi) the presence of minor children, (vii) whether a traditional support award would have been adequate in the absence of the obligation in question, (viii) the age, employability, and educational level of the parties, and (ix) the financial resources, actual or potential, of each spouse. However, the consideration of such factors must occur in a tightly circumscribed evidentiary context. As Chief Bankruptcy Judge Alan H.W. Shiff observed in the *Edwards* case on remand, initial recourse must be made to the language of the divorce decree. *In re Edwards,* 172 B.R. 505, 508 (Bankr.D.Conn. 1994).

■ Here, the nature of the Pension Award obligation is clear from the face of the Decree. There is no evidence before this Court suggesting that the Pension Award was anything other than a classic property division—a judicial allocation of an asset acquired during the period of the parties' marriage. Paragraph 9 of the Stipulation uses clear and concise language to make plain that Paragraph 10 contains the *only* lump sum alimony allowance to the Respondent. Accordingly, the "debt" which the Debtor owed to the Respondent on the Petition Date in connection with the Pension Award was, and is, dischargeable notwithstanding Section 523(a)(5).

■ Having now concluded that any debt the Debtor might owe the Respondent with respect to the Pension Award is dischargeable, the Court turns to a more fundamental and difficult question—whether, in fact, the Pension Award created a "debt" owed by the Debtor (hereafter, the "Debt Issue"). This Court had occasion to consider and opine at length upon this precise issue in *King v. King (In re King),* 214 B.R. 69 (Bankr.D.Conn.1997). There, a pension award similar to the one involved in the instant case was determined to have created a "debt" within the meaning of Bankruptcy Code Section 101(12). There are no facts presented in this case which would cause the Court to modify its analysis from that applied in *King.* If anything, the structure of the Pension Award in the instant case creates an even more compelling case for the existence of a "debt" than that involved in *King.* Therefore, for the reasons stated in *King,* 214 B.R. at 77—81, this Court finds that the Pension Award created a debt owing from the Debtor to the Respondent, and that such debt was discharged in the instant bankruptcy case.

## C. Contempt.

█ Because the Debtor's obligations under the Pension Award were dischargeable in his bankruptcy case, the Respondent's State Court Proceedings were in contempt of this Court's Discharge Order.[2] Nonetheless, given the apparent split of judicial authority on the Debt Issue, as discussed in *King*, this Court declines to grant the Debtor any sanction against the Respondent. However, having now received this Court's declaration of the dischargeability of the Pension Award obligations, any future action by the Respondent to collect the Pension Award—through *further prosecution* by her of actions in the Connecticut State Courts, or otherwise—shall lead to the imposition of monetary and/or other sanctions.

## IV. CONCLUSION

For the foregoing reasons an order shall enter (i) reopening the Debtor's bankruptcy case; (ii) declaring that the Debtor's obligations under the Pension Award were discharged in this case; (iii) finding the Respondent in contempt of the Discharge Order; and (iii) declining at this time to impose a sanction upon the Respondent.

## ORDER REOPENING CASE AND PROVIDING FURTHER RELIEF

The above-captioned Debtor's *Motion for Order Reopening Case and Holding Creditor in Contempt for Violating Discharge Order* having come before the Court after hearing held on June 27, 2001; and the Court having now entered its *Memorandum of Decision on Motion to*

*Reopen and for Contempt,* in accordance with which

**IT IS HEREBY ORDERED** that this case is **REOPENED** to accord relief to the Debtor and for other cause; and

**IT IS FURTHER ORDERED AND DECLARED** that the Debtor's obligations under Paragraph 11 of that certain *Stipulation* dated January 22, 1998, approved and decreed by the Connecticut Superior Court in a marital dissolution action between the Debtor and the Respondent Debra Anne Varrone, bearing Docket No. FA 97–0138729, Judicial District of Waterbury (hereafter, the "Pension Obligations"), were **DISCHARGED** in this case; and

**IT IS FURTHER ORDERED AND DECLARED** that the Respondent's prosecution of a motion in the Connecticut Superior Court seeking to have the Debtor held in contempt for his failure to meet the Pension Obligations was, and is, in contempt of this Court's Discharge Order of March 2, 1999; and

**IT IS FURTHER ORDERED** that no sanction shall be imposed upon the Respondent for action taken prior to this Order.

█

---

2. Since the Respondent's State Court Proceedings were pending for three days prior to the Discharge Order, and 12 days prior to the closing of the bankruptcy case, she was also in violation of the Bankruptcy Code's automatic stay provisions. *See* 11 U.S.C. §§ 362(a)(1), (2), (6).