**In re Gerardo NERO, Debtor.**

**Magdaline Detels, Plaintiff,**

**v.**

**Gerardo Nero, Defendant.**

**Bankruptcy No. 01–34657.**
**Adversary No. 02–3051.**

United States Bankruptcy Court, D. Connecticut.

April 21, 2005.

---

Brian E. Kaligian, Esq., Milford, CT, for Plaintiff.

Noah Eisenhandler, Esq., New Haven, CT, for Debtor–Defendant.

### MEMORANDUM OF DECISION ON DISCHARGEABILITY OF DEBT

ALBERT S. DABROWSKI, Chief Judge.

## I. INTRODUCTION

The present proceeding requires the Court to determine whether a divorce-re-

lated obligation, agreed to and denominated by the parties as "lump sum alimony", is in fact "actually in the nature of alimony, maintenance, or support" pursuant to Bankruptcy Code Section 523(a)(5)(B). For the reasons which follow, the Court answers that question in the negative, and shall enter judgment in favor of the Debtor–Defendant.

## II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. § 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(1).

## III. BACKGROUND

On September 24, 2001, Gerardo Nero (hereafter, the "Debtor–Defendant") commenced the underlying bankruptcy case through the filing of a voluntary petition under Chapter 7 of the Bankruptcy Code.

On April 30, 2002, Magdaline Detels (hereafter, the "Plaintiff"), the former spouse of the Debtor–Defendant, commenced an adversary proceeding within the bankruptcy case through her filing of a three-count *Complaint to Determine Dischargeability of Certain Debts* (hereafter, the "Complaint") pursuant to Bankruptcy Code Sections 523(a)(5) and (15). The Debtor–Defendant filed an *Answer to Complaint* on March 7, 2005, in which he admits all the allegations of Count One,[1] and denies key allegations of Counts Two and Three. At the time of the trial of this proceeding on April 12, 2005, the Plaintiff withdrew Count Three of the Complaint.

Hence, trial was held only with respect to Count Two.

Count Two alleges, *inter alia*, that the Debtor–Defendant is required to pay to the Plaintiff "lump-sum alimony" in the amount of $30,000.00; and that such obligation is a non-dischargeable debt in the underlying bankruptcy case pursuant to Bankruptcy Code Section 523(a)(5). In response, the Debtor–Defendant claims that any debt for "lump sum alimony" was in fact a property settlement, not "actually" in the nature of alimony, maintenance, or support in accordance with Section 523(a)(5)(B), and thus fully dischargeable in his bankruptcy case.

At trial this Court heard the testimony of three witnesses, admitted three exhibits into evidence, received the arguments of counsel, and then took the matter under advisement. Having now reviewed the entire record of this adversary proceeding and underlying bankruptcy case, the Court makes the following findings of fact.

1. In accordance with a marital *Separation Agreement* (hereafter, the "Agreement") which was incorporated into a *Judgment* dated March 19, 1999, Docket No. FA 98 0413565S (hereafter, the "Decree"), the marriage between the Plaintiff and Debtor–Defendant was dissolved by the Connecticut Superior Court (hereafter, "Superior Court"), following an evidentiary hearing before the Honorable Sidney Axelrod (hereafter, the "Superior Court Hearing").

2. Paragraph 3 of the Agreement, titled *Child Support*, provides, *inter alia*, that the Debtor–Defendant shall pay to the Plaintiff the sum of $225.00 per week as child support.

---

1. Count One seeks a judgment deeming a certain child support obligation non-dis-

chargeable pursuant to Section 523(a)(5).

3. Paragraph 5a of the Agreement, titled *Alimony,* provides that "[n]either party shall pay periodic alimony to the other."

4. Paragraph 9 of the Agreement, titled *La Luna Restaurant,* provides as follows:

> *La Luna Restaurant.* The Husband is the holder of one-third of all of the capital stock issued by La Luna Restaurant. The Wife provided ... $36,557.83 ... of her funds in connection with the acquisition, construction and fitting out of said restaurant. The Husband shall keep as his own all of the capital stock issued to him on account of the Wife's investment in La Luna Restaurant. He shall, however, pay to the Wife as lump-sum alimony, in keeping with his obligation to provide support for the Wife, the sum of ... $30,000.00 ... which shall be paid to her as follows: $200.00 per month for a period of 60 months and a final payment of all sums due 61 months from this date or upon the husbands [sic] sale of his interest in La Luna, whichever first occurs.

5. The $30,000.00 obligation created by Paragraph 9 of the Agreement (hereafter, the "Lump Sum Obligation") was also discussed in testimony at the Superior Court Hearing. In the following record colloquy, the Plaintiff was questioned by her attorney, Richard Goldblatt—

Q: Now, during the marriage, you advanced substantial sums of money to your husband in connection with the startup of a business known as La Luna Restaurant?

A: Yes.

Q: And he has asked for, and you've agreed, that he'll keep all of the capital stock, his one-third interest in La Luna Restaurant?

A: Yes.

Q: In connection with that, he's agreed to pay you $30,000, and that payment to you of $30,000 is going to be by way of a lump sum alimony payment, and that's going to be paid to you at the rate of $200 per month, over a period of 60 months, and all of the balance, whatever it is, will be due 61 months from this date. Do you understand that?

A: Yes.

Q: But the money that he owes you in connection with that $30,000 lump sum alimony, will be due you sooner in the event that he sells his interest in La Luna Restaurant?

A: Yes.

Superior Court Transcript (Trial Exhibit 1), pp. 10–11 (hereafter, the "Testimonial Colloquy").

6. Superior Court Judge Axelrod posed the following question to the Plaintiff during her testimony at the Superior Court Hearing—

> THE COURT: Do you realize under this agreement that you are not receiving alimony from your husband, and if you do not receive it today, you can never receive it for the rest of your life?
> THE WITNESS: Yes.

Superior Court Transcript, p. 16 (hereafter, the "Judge's Canvass").

7. According to the Plaintiff's *Financial Affidavit* (Trial Exhibit 3), although she was not gainfully employed at the time of the Decree, she had stock, bond, annuity, and other financial assets valued in excess of $500,000.00. In addition, her *Financial Affidavit* schedules an "investment in La Luna Restaurant" in the amount of $35,000.00.

8. The divorce Financial Affidavit of the Debtor–Defendant was not introduced into evidence at the trial of this adversary proceeding. However, other evidence re-

vealed that at the time of the Decree, the Debtor held ownership interests in (i) La Luna Restaurant, (ii) Nero Air Conditioning, Heating & Refrigeration, Inc., and (iii) real property located at 555 Sherman Avenue, Hamden, Connecticut. However, the record is devoid of any information indicative of the value of such interests at the time of the Decree, or the ability of such assets to produce income from which a support obligation might be funded.

9. Testimony in this Court tended to show that the appellation and structure of the Lump Sum Obligation was informed largely by issues of taxation, although the precise positions of the parties on such issues were not sufficiently developed to allow this Court to make findings or draw conclusions therefrom.

## IV. DISCUSSION

A debtor in a Chapter 7 case receives a discharge of debts under the authority of Section 727(b) of the Bankruptcy Code, which provides, in relevant part, that *"[e]xcept as provided in section 523* of this title, a discharge ... discharges the debtor from all *debts* that *arose before the date of the order for relief* under this chapter ...."* (emphasis supplied).

This adversary proceeding seeks to determine the dischargeability of a certain divorce-related debt under the standards of Bankruptcy Code Section 523(a)(5), which provides in pertinent part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a ... former spouse ... of the debtor, ... for alimony to, maintenance for, or support of such spouse ..., in connection with a separation agreement, divorce decree or other order of a court of record, determina-

tion made in accordance with State ... law by a governmental unit, or property settlement agreement, but not to the extent that—

\* \* \* \* \* \*

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support ....

11 U.S.C § 523(a)(5) (2001).

The party opposing the bankruptcy discharge of a particular debt—the Plaintiff here—bears the burden of proving by a preponderance of the evidence that the requirements of the relevant subsection of Section 523(a) have been met. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

In cases brought under Section 523(a)(5), the task of the Bankruptcy Judge is to determine with respect to the contested obligation whether that alleged obligation (i) constitutes a "debt", (ii) "arose" prior to the bankruptcy order for relief, and (iii) is "actually in the nature of alimony, maintenance, or support." *E.g., In re King,* 214 B.R. 69, 74 (Bankr. D.Conn.1997). The parties do not dispute that the Lump Sum Obligation is a "debt" that arose in the pre-petition period. Thus the narrow question that must be answered in this proceeding is whether the Lump Sum Obligation is "actually in the nature of alimony, maintenance, or support."

Although a bankruptcy judge may consult state law for guidance as to whether a debt is actually in the nature of alimony, maintenance or support, that concept is necessarily one founded in, and resolved through an application of, federal bankruptcy law. *Brody v. Brody (In re Brody),* 3 F.3d 35, 39 (2d Cir.1993); *see, e.g., Forsdick v. Turgeon,* 812 F.2d 801,

802–03 (2d Cir.1987); *Pauley v. Spong*, 661 F.2d 6, 8–9 (2d Cir.1981).[2]

 In divining the true nature of a domestic obligation, an initial and important consideration is the intent behind the obligation. In those cases where a state court issues a divorce decree after a *contested* hearing, the only relevant intention is that of the state court; the bankruptcy court's function is limited to an examination of the state court's purposes.[3]

 In instances such as the present dispute, in which the substance of the divorce decree was an agreement reached and drafted by the parties and subsequently "blessed" by the Superior Court's approval, the analysis is not so straightforward. In such a context, the intentions of the parties at the time of their agreement also become relevant to the question of the purpose of the subject obligation. *See Brody*, 3 F.3d at 39.

 In many instances, such as the present proceeding, the parties claim to have harbored different intentions vis-a-vis the same obligation; and that sort of dissonance is theoretically credible. Assuming that both parties have presented credible, but opposing testimony before this Court with regard to their intentions, the Court is compelled to rely more upon an objective analysis of the actual effect of the subject obligation in light of the circumstances at the time of the divorce.

Here, the Debtor–Defendant claims that the Lump Sum Obligation was intended as part of an equitable division of property, namely his equity interest in La Luna Restaurant (hereafter, the "La Luna Equity"). By contrast, the Plaintiff suggests that the Lump Sum Obligation was intended as a replacement for income she was making at La Luna Restaurant on a part-time and sporadic basis.

 On the record as a whole, this Court finds the Debtor–Defendant's representations to be inherently more credible as to intent. The Plaintiff's theory (i) was never articulated before this Court in a completely intelligible fashion, (ii) was not corroborated by her representations at the time of the negotiation of the Agreement, and (iii) is contradicted by an objective and contextual analysis of the Lump Sum Obligation. In the latter respect this Court has analyzed certain objective "factors" traditionally utilized by courts in divining the actual nature of an obligation imposed in a divorce decree: *e.g.*, (1) the label given the obligation in the decree, (2) the form and placement of the obligation in the decree, (3) whether the obligation terminates on death, remarriage, etc., (4) the economic disparity between the parties, (5) the length of the marriage, (6) the presence of minor children, (7) the age, employability, and educational level of the parties, and (8) the financial resources, actual or potential, of each spouse.

 Factor (7)–the age, employability, and educational level of the parties–was not the subject of any evidence received by

---

**2.** In certain circumstances this federal law analysis is an analytically distinct exercise from that which a Connecticut state court employs in granting awards of "alimony, maintenance or support". *In re Edwards*, 162 B.R. 83 (D.Conn.1993) (Cabranes, J.).

**3.** To determine the state court's intent, initial recourse must be made to the language of the divorce decree. If the state court's intention is not clear from the decree itself, then the

Bankruptcy Court may "look beyond the four corners of the decree to the *evidence before [the state] court* . . . ." *In re Edwards*, 172 B.R. 505, 508 (Bankr.D.Conn.1994) (emphasis supplied). However, because this Court's inquiry is limited to the *intention* of the Superior Court, even proof of matters merely *presented* to that court are of questionable probative value.

this Court, and thus shall not be considered in the Court's analysis. Factor (5)– the length of the marriage (*i.e.* 7 years)– does not favor either party in the Court's analysis. Likewise, factor (6)–the presence of minor children–is of little, if any, consequence since the minor child here was provided for by a separate award of child support. Factor (1)–the label given the obligation in the decree–weighs in favor of the Plaintiff since the parties agreed to denominate the Lump Sum Obligation as "alimony". However, the remaining four factors are supportive of the Debtor–Defendant's position.

Regarding Factor (2), the placement of the Lump Sum Obligation within a paragraph of the Agreement titled, "La Luna Restaurant", and the recitals contained therein concerning the Plaintiff's monetary contribution toward the acquisition, construction and fitting out of La Luna, are strongly supportive of the Debtor–Defendant's claim that the Lump Sum Obligation was crafted to reimburse the Plaintiff for an *investment,* not to address a specific need for support. Such a view is further bolstered by the Testimonial Colloquy, which highlights the equitable link between the Lump Sum Obligation and the La Luna Equity. No mention was made there, or in the Agreement, of the Plaintiff's support theory. In addition, the Plaintiff's *Financial Affidavit* references an "investment" in La Luna Restaurant.

Since the Lump Sum Obligation does not terminate upon the death, remarriage, or other significant economic event in the life of the Plaintiff, and thus appears to be calculated without regard for the Plaintiff's ability to support herself, Factor (3) weighs in favor of the Debtor–Defendant. Similarly, the record before this Court is supportive of the Debtor–Defendant on Factors (4)—the economic disparity between the parties—and (8)—the financial resources of each spouse. At the time of the marital dissolution, the Plaintiff had in excess of $500,000.00 in financial assets. By contrast, the record reveals nothing of relevance concerning the Debtor–Defendant's resources at the time of the Decree.

Finally, the intention espoused by the Debtor–Defendant is corroborated by the understanding of the Superior Court. Specifically, the Judge's Canvass reveals that the Superior Court viewed the Decree as one lacking a true spousal support obligation.

## V. CONCLUSION

For the foregoing reasons, this Court concludes that the Plaintiff has failed to meet her burden of proof. The evidence as a whole establishes that the Lump Sum Obligation was created to equitably unscramble one aspect of the parties' property rights and holdings and, as such, is not actually in the nature of alimony, maintenance, or support. Accordingly, judgment shall enter in favor of the Debtor–Defendant on Count Two of the Complaint,[4] declaring the dischargeability of the Lump Sum Obligation in the underlying bankruptcy case.

### JUDGMENT

The above-captioned adversary proceeding came before the Court following trial. Having fully considered all of the evidence and the arguments of the parties, the Court entered this date its *Memorandum of Decision on Dischargeability of Debt,* in accordance with, it is hereby

---

4. On Count One, judgment shall enter in favor of the Plaintiff on the pleadings. Count Three has been withdrawn.

**ORDERED** that judgment shall enter on the pleadings in favor of the Plaintiff on Count One of the Complaint; the "child support" obligation which is the subject of that Count is declared to be **NON–DIS-CHARGEABLE** in the Debtor's bankruptcy case; and

**IT IS FURTHER ORDERED** that judgment shall enter in favor of the Debtor–Defendant on Count Two of the Complaint; the "lump sum" obligation which is the subject of that Count is declared to be **DISCHARGEABLE** in the Debtor's bankruptcy case.[5]

---

**5.** Count Three of the Complaint was previously withdrawn by the Plaintiff.