In the Matter of James C. BALVICH, Debtor.

James C. BALVICH, Plaintiff,

v.

Joan M. BALVICH and Vaughan and Vaughan, Defendants.

Bankruptcy No. 89–40614–REG.

Adv. No. 90–4006.

No. L91–00044.

United States District Court, N.D. Indiana, Hammond Division, at Lafayette.

Nov. 25, 1991.

Eric Allen, Greenfield, Ind., for plaintiff.

Kelly V. Busch, Lafayette, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On June 3, 1991, pursuant to 28 U.S.C. § 158, the plaintiff, James Balvich, appealed to this court the May 22, 1991 decision judgment of the bankruptcy court. 135 B.R. 327. The bankruptcy court ruled that James' obligation to 1) pay alimony; 2) satisfy a mortgage upon Joan's residence; 3) pay 1988 taxes; and 4) pay Joan's attorney fees were non-dischargeable debts. Dischargeability is determined according to federal rather than state law. A debt owed to "a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, ... or property settlement agreement...." is not dischargeable in bankruptcy. 11 U.S.C. 523(a)(5); See also *Matter of Seibert,* 914 F.2d 102, 106 (7th Cir.1990). Thus a conclusion by the bankruptcy court that a debt is in the nature of alimony, maintenance or support necessitates a decision that the debt is not dischargeable.

To determine the nature of the obligations, the bankruptcy court had to consider the intent of the parties at the time the settlement agreement was negotiated. See *Matter of Woods,* 561 F.2d 27, 29 (7th Cir.1977); *In re Maitlen,* 658 F.2d 466 (7th Cir., 1981). Such decisions are questions of fact, not questions of law determinations. See *Boyle v. Donovan,* 724 F.2d 681 (8th Cir.1984). This court reviews appeals of bankruptcy court factual determinations under the clearly erroneous standard of review. Bankruptcy Rule 8013. Thus if there is a reasonable basis for the bankruptcy court's decision, this court will not disturb it. Given this standard of review and the reasons stated below, this court AFFIRMS the bankruptcy court decision with respect to each obligation.

### I.

Plaintiff and defendant married on June 2, 1973. After thirteen years of marriage, they separated on September 24, 1986.

James filed a petition to dissolve the marriage on October 28, 1986. The Boone Circuit Court granted the divorce on June 20, 1989. On the same day the court approved a settlement agreement between the parties which provided for the division of their property and post-dissolution commitments to each other. The couple had not been able to resolve the question of the debtor's liability for the 1988 taxes. The Circuit Court decided that issue in a July 17, 1989 order holding James responsible for any and all tax liability. The Circuit Court relied heavily upon a Motion to Direct Respondent [Joan] to Sign Income Tax Extension Form filed by James for the 1988 federal joint income tax return in which he stipulated that he would "be liable for any and all tax liability, if any, as the result of said federal and state tax returns and will hold Respondent [Joan] harmless."

## II.

■ This court first addresses the issue of alimony. It is of no moment that a state court in Indiana may not order alimony payments, the parties may still agree to it. See *Pfenninger v. Pfenninger*, 463 N.E.2d 1115, 1119 (Ind.App.1984). The Balviches did agree to an alimony provision, and it was incorporated into the settlement agreement. The bankruptcy court was correct when it determined that the narrow issue before it was whether the alimony obligation was in the nature of alimony, maintenance or support.

■ Significantly, the obligation was specifically labeled alimony (Settlement Agreement, Article XII), and § 12.1(e) provided for alimony payments to cease upon Joan's death. When the parties entered their agreement, James was earning approximately two hundred fifty thousand dollars ($250,000) per year. Joan's only source of income was the support she received from James. Additionally, Joan had no marketable employment experience. Throughout the course of their marriage, the parties had agreed that Joan would remain at home with their children. Thus at the time of the agreement their earning capacities varied greatly.

In light of these facts this court cannot find that the bankruptcy court's decision was clearly erroneous. The labeling of the obligation as alimony and providing a separate section in the agreement points toward a decision that it was in the nature of support. See *In re Woods*, 561 F.2d 27, 30 (7th Cir.1977). Further, the fact that the obligation ceased upon Joan's death points to a conclusion that the obligation was in the nature of support. *In re Maitlen*, 658 F.2d at 469–470. Finally, the payments reflected a difference in income-earning potential rather than compensation for property retained by James. See *In re Coffman*, 52 B.R. 667 (Bankr.D.Md.1985). These facts, as recognized by the cases cited, provide a reasonable basis for the bankruptcy court's decision that the alimony obligation was in the nature of maintenance or support and thus not dischargeable.

■ As to the mortgage obligation as created by the dissolution property settlement agreement, again, this court cannot find that the bankruptcy court's conclusion was clearly wrong. With respect to this issue *Maitlen* provides controlling precedent. In *Maitlen*, the court found the mortgage payment to be in the nature of support, because the obligation was included in the agreement near the sections addressing custody and support of the parties' minor child. Furthermore, the obligation was intended to assure a home for the wife and child as the husband earned an annual income of approximately twelve thousand dollars ($12,000) while the wife worked as a homemaker. *Id.* at 469.

The facts in this case are, as the defendant suggests, "strikingly similar" to those in *Maitlen*. The marital residence provision of the Balviches' agreement is located between the alimony and custody provisions. Joan Balvich and the parties' four children were to continue residing in the marital residence following the dissolution. At the time of the dissolution James earned approximately two hundred fifty thousand dollars ($250,000) annually. Joan was a homemaker with no income. These facts when considered in light of *Maitlen* pro-

vide a reasonable basis for the Bankruptcy Court's statement that:

> The clear purpose and intent of this obligation was for the debtor to provide his former wife and children with the ability to remain in their former home, should that be their desire. As such, it represents his continued commitment to provide them with shelter. The court can think of few obligations which are more quintessential in the nature of support than the obligation to provide a roof over the heads of one's family. Such an obligation is not dischargeable. *[In re] Gianakas,* 917 F.2d [759] at 764 [3d Cir. 1990]; *Maitlen,* 658 F.2d 466.

Bankruptcy Court's Decision 135 B.R. at 335.

■ The bankruptcy court also ruled that the tax obligation created by the order of the dissolution court was non-dischargeable. The parties had not been able to reach an agreement on this issue; it was resolved by the dissolution court. Approximately one month after the dissolution, the Boone County Circuit Court issued findings of fact, conclusions of law and ordered Dr. Balvich responsible for all 1988 tax liability incurred by the parties. This court is restricted to a "clearly erroneous" standard in its review of the bankruptcy court's finding with respect to this issue.

In August, 1988 Dr. Balvich filed a Motion to Direct Respondent [Joan Balvich] to Sign Income Tax Extension Form for the 1988 federal joint income tax return. In his petition, Dr. Balvich stipulated that he would assume all tax liability due thereon. Under those terms Joan Balvich signed the extension. See Boone Circuit Court Rule of July 17, 1989 at 2–3. The wife carried out all of her settlement negotiations and took care of her financial affairs with the view that the 1988 income tax question had been settled as stipulated to by her husband. As she relied upon this when handling her financial affairs, she obviously did not include it as an expense to be covered when calculating the monetary needs of herself and the children. This affected her negotiation of the support and maintenance provisions of the settlement agreement. Furthermore, no evidence suggests that property was set aside for the husband in exchange for his paying all 1988 taxes. Based upon these factors the bankruptcy court found Dr. Balvich's tax obligation nondischargeable. This court cannot find that conclusion clearly wrong. Therefore, it must stand.

■ Finally, the bankruptcy court concluded that the attorney's fees obligation as created by the dissolution settlement agreement was in the nature of support, maintenance or alimony. The plaintiff argues that this finding is inconsistent with the holding in *In re Tackett,* 66 B.R. 77 (Bankr.N.D.Ind.1986). Unlike the other three obligations, this issue presents not just questions of fact but mixed questions of fact and law. This court's determinations of the law must be independent; the "clearly erroneous" standard of review does not apply. *Maitlen,* 658 F.2d at 470. The bankruptcy courts in this district appear split on the question of whether attorney's fees awarded pursuant to I.C. 31–1–11.5–16 [1] are dischargeable in bankruptcy. The *Tackett* court ruled that awards of attorney's fees pursuant to I.C. 31–1–11.5–16 would not be dischargeable because "not based upon spousal support and thus not exempt under 11 U.S.C. § 523(a)(5)." *Tackett,* 66 B.R. at 79.

The bankruptcy court deciding *Balvich* could not agree with the strict language of the *Tackett* court. The decisions and rationale adopted by Indiana courts when awarding attorney fees in dissolution cases heard since the 1986 *Tackett* decision influenced the *Balvich* court. These more recent Indiana decisions have

> considered several factors when exercising their discretion to award attorney

---

1. I.C. 31–1–11.5–16 provides: "The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorneys' fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. The court may order the amount to be paid directly to the attorney, who may enforce the order in his name."

 

fees in marriage dissolution proceedings. These factors include the resources of the parties, their economic condition and the ability of the parties to engage in gainful employment and earn adequate income. *Barnes v. Barnes*, 549 N.E.2d 61, 66 (Ind.App.1990); *Euler v. Euler*, 537 N.E.2d 554, 556 (Ind.App.1989); *Sovern v. Sovern*, 535 N.E.2d 563, 567 (Ind. App.1989).

Bankruptcy Court Decision 135 B.R. at 337. The factors which the Indiana courts have been using to determine whether to award attorney fees look heavily to financial resources; those are the same factors that are relevant in a federal bankruptcy determination of dischargeability. Much to its credit, the *Balvich* bankruptcy court decision recognizes this similarity. Other bankruptcy courts within this circuit have held that attorney fees "based on the financial resources of the parties, ... ordinarily indicates that the award is in the nature of maintenance or support." *In re Kijewski*, 91 B.R. 48, 50 (Bankr.N.D.Ill.1988). Another bankruptcy court observed that "[b]ankruptcy courts have usually found that attorney fees awarded on a spouse's behalf are non-dischargeable support rather than property division." *In re Wisniewski*, 109 B.R. 926, 930 (Bankr.E.D.Wis.1990). This court agrees with the view adopted by the *Balvich* bankruptcy court for it recognizes the weighing of factors federal law has adopted for purposes of determining the nature of obligations. See *Seibert*, 914 F.2d at 106, and *Woods*, 561 F.2d at 29.

Of course, the bankruptcy court did not rely blindly upon the Boone Circuit Court's considerations of the parties' financial positions and intent. It did its own assessment of the parties' intent. This portion of the bankruptcy court's inquiry is, of course, a factual determination and, therefore, analyzed using a "clearly erroneous" standard of review. Bankruptcy Rule 8013. James and Joan Balvich's income potential varied significantly. Throughout their marriage Joan had worked as a homemaker while James built a medical practice which provided him with an annual income of approximately two hundred fifty thousand dollars ($250,000) at the time of the dissolution.

The settlement agreement indicates an intent for the parties to continue in these roles. It provided for Joan and the children to continue residing at the marital address and for sufficient financial support to allow Joan to continue as a full-time mother. Further, Boone Circuit Court's Judge Drury stated that no property was set aside to Dr. Balvich in return for his being responsible for Mrs. Balvich's attorney fees. That testimony combined with the other above-cited factors provided sufficient evidence for the bankruptcy court to determine that the attorney fee obligation was intended to be in the nature of alimony, maintenance or support, not as a property settlement. Thus, it is not dischargeable.

### III.

For the foregoing reasons, the conclusions reached in the May 22, 1991 decision of the bankruptcy court and brought before this court for review are AFFIRMED.