In re Charles D. CUSEO, Debtor.

Charles D. Cuseo, Plaintiff,

v.

Judy A. Cuseo and Ronald I. Chorches, Trustee, Defendants.

Bankruptcy No. 98–34682.
Adversary No. 99–03008.

United States Bankruptcy Court,
D. Connecticut.

Dec. 9, 1999.

Valerie A. Finney, Guilford, Connecticut, for plaintiff/respondent.

Douglas S. Skalka, Neubert, Pepe & Monteith, P.C., New Haven, Connecticut, for Judy A. Cuseo, defendant/movant.

## MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

This opinion addresses the propriety of a summary judgment of non-dischargeability in favor of Defendant, Judy A. Cuseo, in connection with a Connecticut Superior Court divorce decree awarding her a one-half interest in her former husband's Disability Pension. The total monetary amount ($345.48) due weekly to the Defendant from the Plaintiff pursuant to the divorce decree is not in dispute. Further, the parties agree that an obligation in that amount will survive this bankruptcy case. However, the parties contest the characterization of the *source* of the bulk of those non-dischargeable payments. More specifically, the question is whether the Defendant may ultimately have the opportunity to *receive and collect* $295.38 of the total amount by payment from (i) the Plaintiff's Disability Pension—a result requiring, *inter alia*, this Court to determine that the Connecticut Superior Court originally intended the Disability Pension Award to be for the support or maintenance of the Defendant—or (ii) the Plaintiff's non-exempt disposable income and/or assets in the form of alimony, as urged by the Plaintiff.

### II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).

## III. PROCEDURAL BACKGROUND

This bankruptcy case was commenced through the Debtor's filing of a voluntary petition, and this Court's simultaneous order for relief, under Chapter 7 of the United States Bankruptcy Code on October 23, 1998. The Debtor–Plaintiff instituted this adversary proceeding on January 13, 1999, through the filing of a Complaint (hereafter the "Complaint") seeking a determination and declaration of dischargeability pursuant to Bankruptcy Code Section 523(a)(5) of his obligation to make certain payments from his Disability Pension to his former spouse, Judy A. Cuseo (hereafter the "Defendant"), pursuant to the terms of a July 15, 1998 divorce decree entered by the Connecticut Superior Court. In addition to answering the Complaint, the Defendant, on February 26, 1999, filed a counterclaim (hereafter the "Counterclaim") seeking a judgment of non-dischargeability under Section 523(a)(15), alleging, *inter alia*, that the Disability Pension "is the primary source of support to her from the Plaintiff." Counterclaim at ¶ 11.

On August 20, 1999, the Defendant filed and served in this proceeding a *Motion for Summary Judgment [on the Complaint]*[1] (hereafter the "Defendant's Motion") (Doc. I.D. No. 27), together with a *Memorandum of Law in Support of Motion for Summary Judgment* (Doc. I.D. No. 28), and a *Local Rule 9(c)(1) Statement* (*i.e.*, statement of material facts as to which it is claimed there is no genuine issue) (hereafter the "Rule 9(c)(1) Statement") (not separately docketed), all in accordance with Fed.R.Civ.P. 56 and Rule 9(c)(1) of the Local Rules of Civil Procedure of the United States District Court for the District of Connecticut, made applicable to this proceeding by D.Conn. LBR 1001–1(b).

On September 13, 1999, the Plaintiff responded to the Defendant's Motion by filing a *Plaintiff's Motion for Summary Judgment and Response to Defendant's Motion for Summary Judgment*[2] (hereafter the "Plaintiff's Motion") (Doc. I.D. No. 29) accompanied by a *Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment* (Doc. I.D. No. 30) and a *Local Rule 9(c)(2) Statement* (*i.e.*, the responsive statement of material facts required by Local Rule 9(c)(2)) (representing that "[t]he material facts contained in ... the Defendant's Local Rule 9(c)(1) Statement are hereby admitted") (not separately docketed). Thus, both parties agree that there is no genuine issue as to any material fact, and each asserts that (s)he is entitled to summary judgment as a matter of law. A hearing on the Defendant's and Plaintiff's Motions (hereafter collectively, the "Cross Motions") was held on December 6, 1999.

## IV. FACTUAL BACKGROUND

The following facts are undisputed and/or determined not to be in genuine issue by review of the files and records of this case. On or about July 15, 1998, the fifteen-year marriage of the Plaintiff and the Defendant was dissolved by a domestic relations order of the Connecticut Superior Court for the Judicial District of Fairfield. In connection with the parties' divorce proceedings, Superior Court Judge Lloyd Cutsumpas issued a Memorandum of Decision dated July 15, 1998 (hereafter the "Memorandum of Decision"), which sets forth, *inter alia*, certain financial awards. The subject matter of one such award was a Disability Pension which the Plaintiff receives in monthly installments as a result of his former employment as a firefighter with the Town of Westport, Connecticut (heretofore and hereafter the "Disability Pension"). More specifically, the Memorandum of Decision awards to the Defendant, *inter alia*, (i) alimony of

---

1. The Defendant did not seek summary judgment on the Counterclaim.

2. The Plaintiff's Motion is directed only at the Complaint—it does not seek summary judgment on the Counterclaim.

$50 per week (hereafter the "Alimony Award")[3] and, (ii) one-half of the Disability Pension payments (heretofore and hereafter the "Disability Pension Award").[4] The Plaintiff's obligation to make Disability Pension Award payments to the Defendant is claimed by him to be a debt that is dischargeable in this case.

Initially, Disability Pension Award payments to the Defendant were not being made, due to the refusal of the Town of Westport to accept a Qualified Domestic Relations Order. Consequently, the Memorandum of Decision was amended on August 13, 1998, to order the Plaintiff to transfer the Disability Pension Award payments directly to the Defendant until a Qualified Domestic Relations Order was approved and the Defendant began receiving payments directly from the relevant pension fund. The Plaintiff failed to make the required payments, and on October 23, 1998, he commenced the instant bankruptcy case.

On January 13, 1999, at 10:41 A.M., the Plaintiff initiated the instant adversary proceeding by filing the Complaint. Earlier that same day, this Court granted the Defendant relief from the automatic stay of Section 362(a)[5] to permit her to request the Connecticut Superior Court to modify the Alimony Award. Forty-five minutes later, at the State Court hearing, Judge Cutsumpas granted substantive relief to the defendant stating:

> THE COURT: Okay. Well, when the court fashioned it[s] original alimony order, it considered the fact that the defendant would not have his full pension available to him because of the QUADRO. It considered that he'd have less money available to him. Also, *when the court fashioned its original alimony order, it considered ... the fact that the plaintiff would have available to her, the income from the pension to help her maintain herself.* Now because of the defendant's actions in filing for bankruptcy—I don't know what his motivations were. Those are really not before me. But we have the anomalous situation where he has available to him, the share of the pension which the court planned would not be available to him. *And the plaintiff does not have the*

3. The Memorandum of Decision reads in pertinent part: "Alimony—The Husband shall pay the Wife Alimony of $50 per week for a period of 10 years or until the death of either party, the Wife's remarriage, or cohabitation as defined in Connecticut General Statute Section 46b–86(b)." *Memorandum of Decision* at page 10.

4. The Memorandum of Decision reads in pertinent part: "Pension—One-half of the Husband's disability pension is awarded to the Wife as a property settlement pursuant to Sec. 46b–81 of the General Statutes. The Wife's attorney will prepare a Qualified Domestic Relations Order [QUADRO] to effectuate the transfer. Until the order is approved by the Plan Administrator the court will retain jurisdiction over the disposition of the disability pension." *Memorandum of Decision* at pages 11–12.

5. On January 12, 1999, the Plaintiff filed in this Court a *Complaint Seeking to Enjoin Continuation of Action in Violation of Automatic Stay* (Adversary Proceeding No. 99–3007, Doc. I.D. No. 1) seeking from this Court a

Temporary Restraining Order and Permanent Injunction restraining and enjoining the Defendant from "continuing in any manner [an] action commenced by the Defendant in the Superior Court for the State of Connecticut" scheduled to be heard by the State Court on January 13, 1999 at 11:00 AM. *Complaint* at p. 3. According to this Complaint "[o]n December 14, 1998, the Defendant instituted an action in [the State Court] seeking to recover from the Plaintiff payments [due pursuant to the Disability Pension Award]", *id.* at ¶ 4, and "[u]nless the Defendant is ... restrained ... immediate irreparable injury ... will result to the Plaintiff in that the Defendant will seek to incarcerate him for contempt of court for failure to make said payments." *Id.* at ¶ 7. At an expedited hearing held January 13, 1999 at 10:00 AM, this Court, having received assurances that the Plaintiff would not be "jailed" that day, and having determined it "appropriate that that State Court proceeding go forward this morning", orally granted a motion for relief from the automatic stay for that purpose. *Transcript of Proceedings of January 13, 1999*, at pp. 12–17.

*share of the pension which the court planned would be—would have been available to her for her maintenance and support.* This is a manifest injustice and the situation cries for relief. Therefore, the court is going to modify its alimony order and award the plaintiff the additional weekly sum of $295.38. This sum added to the 50 dollars per week previously ordered makes for a new alimony order of $345.48.

Transcript of State Court proceeding of January 13, 1999, at p. 2 (emphasis added)[6].

## V. DISCUSSION

### A. Summary Judgment Standards.

Federal Rule of Civil Procedure 56(c), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, directs that summary judgment enter when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

When ruling on motions for summary judgment "the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing that there are no material facts in dispute and all reasonable inferences are to be drawn, and all ambiguities resolved in favor of the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Rule 9(c) of the Local District Court Rules supplements Fed.R.Civ.P. 56(c) by requiring statements of material fact from each party to a summary judgment motion. The material facts set forth in a movant's statement "will be deemed to be admitted unless controverted by the statement required to be served by the opposing party...." Local District Court Rule 9(c)1. In this case there is no factual dispute as the facts set forth in the Defendant's Rule 9(c)(1) Statement are admitted in the Plaintiff's Rule 9(c)(2) Statement.

### B. Discharge Generally

A bankruptcy discharge has the following effects, *inter alia:*

> (1) [it] voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 ... of.. title [11] ... [and]

> (2) [it] operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor....

11 U.S.C. § 524(a) (1999).

A debtor in a Chapter 7 case receives a discharge of debts under the authority of Section 727(b) of the Bankruptcy Code, which provides, in relevant part, that "[e]xcept as provided in section 523 of this title, a discharge ... discharges the debtor from all *debts* that *arose before the date of the order for relief* under this chapter...." (emphasis supplied). This adversary proceeding seeks to determine the dischargeability of certain alleged debts under the

6. Judge Cutsumpas effected the oral ruling that same date endorsing an order reading, in part: "The Court modifies the previous Alimony Order and orders that the Plaintiff be awarded $295.48 per week in Alimony plus the $50.00 per week that was previously ordered by the Court thereby ordering a total Alimony Award of $345.48 to be paid per week by the Plaintiff to the Defendant...." The plaintiff does not seek a determination of dischargeability as to the Alimony Award as originally entered, or as modified on January 13, 1999.

standards of Bankruptcy Code Section 523, which provides in pertinent part as follows:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> > (5) to a spouse ... [or] former spouse ... of the debtor ... for alimony to, maintenance for, or support of such spouse ... in connection with a ... divorce decree or other order of a court of record....
>
> * * *

11 U.S.C. § 523(a) (1999).

■ The party opposing the bankruptcy discharge of a particular debt bears the burden of proving by a preponderance of the evidence that the requirements of the relevant subsection of Section 523(a) have been met. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Thirtyacre,* 36 F.3d 697 (7th Cir. 1994). Against this background of legal authority the Court now turns to analyze the factual circumstances "admitted" or undisputed in this case.

## C. Dischargeability of Domestic Relations Obligations—Section 523(a)(5).

■ In cases brought under Section 523(a)(5), the task of the Bankruptcy Judge is to determine whether the alleged obligation (i) constitutes a "debt"[7], (ii) which "arose" prior to the bankruptcy order for relief[8], (iii) is "for alimony ..., maintenance ..., or support ... of [a]

spouse or child ...", and (iv) is "in connection with a ... divorce decree...."The substantive inquiry required in assessing the dischargeability of the Disability Pension Award in this proceeding is whether that award was for alimony, maintenance or support. An obligation is in the nature of alimony, maintenance or support when it is intended to provide support for the spouse. Although a bankruptcy judge may consult state law for guidance as to whether a debt is actually in the nature of alimony, maintenance or support, the determination is necessarily one premised upon federal bankruptcy law, *see Forsdick v. Turgeon,* 812 F.2d 801, 802–03 (2d Cir. 1987); *Pauley v. Spong,* 661 F.2d 6, 9 (2d Cir.1981). In certain circumstances this federal law analysis is an analytically distinct exercise from that which a Connecticut state court employs in granting awards of "alimony, maintenance or support". *In re Edwards,* 162 B.R. 83 (D.Conn.1993) (Cabranes, J.).

■ Therefore, assuming that the obligation at issue in this proceeding constitutes a pre-petition "debt", this Court's task under Section 523(a)(5) is to determine whether the Connecticut Superior Court created the obligation for the maintenance or support of the Defendant, or to effect some other purpose, such as a division of property or as punishment for fault leading to the underlying marital dissolution.[9] *See id.*

---

7. Not every obligation imposed by a divorce decree creates a "debt"; each such obligation must be separately analyzed. The term "debt" is defined by the Bankruptcy Code as "liability on a claim". 11 U.S.C. § 101(12) (1993). The term "claim", in turn, means "right to payment ... or ... right to an equitable remedy for breach of performance if such breach gives rise to a right to payment...." 11 U.S.C. § 101(5) (1993). The United States Supreme Court has instructed that Congress intended by this language to adopt the broadest available definition of "claim". *Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991).

8. The date on which a debt arises is also critical in determining whether such debt is dischargeable in a given bankruptcy case. In a voluntary Chapter 7 case such as this one, only debts arising prior to the petition date are eligible for discharge. 11 U.S.C. § 727(b). Stated somewhat differently, debts arising *after* the petition date of a given bankruptcy case cannot be discharged in that case, but *may* be eligible for discharge in a later case. *Cf.* 11 U.S.C. § 727(a)(8) (1993).

9. Among the factors traditionally utilized by courts in divining the actual nature of an obligation imposed in a divorce decree are the following: (1) the label given the obligation in the decree, (2) the form and place-

There is no question that the language of the Disability Pension Award [10], standing alone, evidences a division of property with respect to an asset acquired during the period of the parties' marriage. This Court, however, has much more than the Disability Pension Award language as evidence of Judge Cutsumpas' actual intent and purpose. For on January 13, 1999, Judge Cutsumpas made it clear that when entering the Disability Pension Award on July 15, 1998, he intended that "the plaintiff would have available to her, the income from the pension *to help her maintain herself.*" Transcript of January 13, 1999 (emphasis added). Indeed, Judge Cutsumpas deemed any contrary interpretation to effect "a manifest injustice". *Id.*

It is obvious that Judge Cutsumpas entered the original divorce decree and Memorandum of Decision without consideration of the potential for discharge of the Disability Pension Award in bankruptcy. Otherwise he would have articulated at that time the "maintenance and support" purpose of that award. Accordingly, while technically the January 13, 1999 Order *modifies* the Memorandum of Decision (converting the Disability Pension Award to a straightforward "total Alimony Award"), this Court treats the State Court proceedings of January 13, 1999, as an articulation and clarification of original purpose, rather than determinative evidence that the Disability Pension Award was not in the nature of maintenance or support as argued by the Plaintiff. *See*

Plaintiff's Memorandum of Law at page 6. Indeed, had Judge Cutsumpas not clearly stated his purpose on January 13, 1999, the parties, and perhaps this Court, *see* Fed.R.Evid. 614, may have called him as a witness in the instant adversary proceeding.

■ In view of the above, this Court finds that despite the Memorandum of Decision's use of the phrase "property settlement", the Disability Pension Award of one-half of the Debtor's Disability Pension was for the "maintenance and support" of the Defendant within the meaning of Section 523(a)(5). *See, e.g., In re King,* 214 B.R. 69 (Bankr.D.Conn.1997); *In re Edwards,* 172 B.R. 505, 508 (Bankr.D.Conn. 1994) (Bankruptcy Court may look beyond the four corners of the decree for purpose). Having made this determination it is not necessary for the Court to address the Defendant's contention that the Disability Pension Award does not constitute a debt.[11]

■ The Court makes the foregoing determination on the basis of certain assumptions as to the full intention of Judge Cutsumpas. The "$50 per week" Alimony Award was attended by traditional alimony conditions—*i.e.* termination by passage of time (ten years), death of either party, or the Defendant's remarriage or cohabitation.[12] Memorandum of Decision at p. 10. By contrast, these conditions and limitations were not specifically stated to attach to the Disability Pension Award. Howev-

ment of the obligation in the decree, (3) whether the obligation terminates on death, remarriage, etc., (4) the economic disparity between the parties, (5) the length of the marriage, (6) the presence of minor children, (7) whether a traditional support award would have been adequate in the absence of the obligation in question, (8) the age, employability, and educational level of the parties, and (9) the financial resources, actual or potential, of each spouse.

**10.** "One-half of the Husband's disability pension is awarded to the Wife as a *property settlement* " (emphasis added).

**11.** The Defendant argues that "the Memorandum of Decision *granted, gave, or conferred* to the Defendant one-half of the Disability Pension", "did not create an obligation on the part of the Plaintiff to the Defendant" and, consequently, there is no "debt" subject to discharge or regarding which the court can make a determination of dischargeability. *Defendant's Memorandum of Law* at page 8. *See, e.g., In re King, supra,* 214 B.R. at 74–81.

**12.** The presence of such conditions is strongly suggestive of a support purpose, and their absence is strongly suggestive of a non-support purpose.

er, this Court presumes that by operation of state law and/or incident to further State Court proceedings [13], some or all of these conditions will attach to the Disability Pension Award or modification thereof. Nevertheless, the Judgment which issues this same date is without prejudice to the Plaintiff to seek its vacation or amendment should conditions related to death, remarriage or cohabitation, and/or term, fail to attach subsequently to the Disability Pension Award or related modification.

## VI. CONCLUSION

The record of this case, including specifically the admitted Rule 9(c)(1) facts, and Judge Cutsumpas' January 13, 1999 record comments, show that there is no genuine issue as to any material fact. The indisputable facts compel the conclusion that the July 13, 1998 award of one-half of the Debtor's Disability Pension was "for maintenance and support" within the meaning of Section 523(a)(5). Accordingly, the Defendant, Judy A. Cuseo, is entitled to judgment on the Plaintiff's Complaint as a matter of law. A separate Judgment consistent with this Memorandum of Decision shall issue this same date.[14]

---

**13.** At the December 5, 1999 hearing the parties noted that further proceedings before the State Court would follow the decision of this Court in this matter.

**14.** The Plaintiff's Motion shall be **DENIED** by margin order. The Defendant's counterclaim is now moot.