[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This court has been asked to decide, in the context of a motion for contempt, whether the defendant's obligation to pay his former wife an amount equal to the cost of her automobile insurance over a two-year period and to reimburse her for federal income taxes that he owed but the IRS seized from her tax refund are debts in the nature of alimony, support or maintenance and thus nondischargeable pursuant to11 U.S.C. § 523 (a)(5). This court finds that pursuant to federal bankruptcy law, both debts are in the nature of alimony, support, or maintenance and are not dischargeable. The court also finds that the defendant ceased making payments on the above debts based on a reasonable belief that the debts were discharged in bankruptcy. Accordingly, the court denies the motion for contempt, but orders the parties to file additional submissions as to the orders the court should enter now to enforce the plaintiffs rights to these obligations. CT Page 8107
FACTS
The marriage of the parties was dissolved by the Superior Court on November 4, 1998. As part of the judgment of dissolution, the court (Wiese, J.) incorporated the terms of a written stipulation signed by both parties that day. In that stipulation, both parties waived alimony, each party assumed responsibility for its own debts, and the defendant assumed responsibility for paying the cost of the plaintiffs automobile insurance for two years.
On February 17, 1999, the plaintiff filed a motion to open the judgment of dissolution of marriage. She asked the court to require the defendant to pay a debt owing to the IRS for the year ending December 31, 1997, in the amount of $1,545.13 that was not listed on the financial affidavits submitted to the court by the parties. The parties filed a joint tax returns for 1997 in August of 1998. The IRS, in partial satisfaction of the debt, seized the plaintiffs tax refund. In her motion, the plaintiff averred that the debt was incurred solely by the defendant. On March 25, 1999, the court (Wiese, J.) ruled that the judgment of dissolution need not be opened to grant the plaintiff appropriate relief The court instead required the defendant to reimburse the plaintiff in the total amount of $575.00 ($50.00 per month until satisfied), which represented a portion of the plaintiffs tax refund seized by the IRS in satisfaction of the debt for the 1997 tax year. Additionally, the defendant would be responsible for the balance owed to the IRS.
On September 14, 1999, the defendant filed for Chapter 7 bankruptcy protection, scheduling the debts to the plaintiff as unsecured nonpriority claims in an undetermined amount. The bankruptcy court granted the defendant a discharge on December 21, 1999.
On January 28, 2000, the plaintiff filed the present motion for contempt alleging that the defendant informed the plaintiff on or about January 1, 2000, that he would no longer make payments related to the plaintiffs automobile insurance premiums.
On February 22, 2000, the defendant's attorney filed a claim for statutory exemption by reason of bankruptcy which essentially states that the plaintiffs claims were discharged because the debt he owed to the plaintiff was in the nature of a property settlement that was automatically discharged in bankruptcy because the creditor had not filed an adversary complaint under Section 523(a) (15) of the Bankruptcy Code.[1] The defendant sought a permanent injunction preventing collection of discharged debt and therefore objects to the plaintiffs motion for contempt. In response. the plaintiff claims that the debts CT Page 8108 owed to the plaintiff by the defendant are excepted from discharge pursuant to 11 U.S.C. § 523 (a)(5) as they are in the nature of support or maintenance.
DISCUSSION
State courts have concurrent jurisdiction with bankruptcy courts in determining whether a debt is excepted from discharge pursuant to11 U.S.C. § 523 (a)(5). Lewis v. Lewis, 35 Conn. App. 622,644 A.2d 273 (1994); see also Taylor v. Flocke, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 262260 (May 7, 1991,Bassik, J.), citing Aurre v. Kalaigan (In re Aurre), 60 B.R. 621, 624
(Bankr.S.D.N.Y. 1986); Balvich v. Baivich (In re Balvich), 135 B.R. 323
(Bankr.N.D.Ind. 1991) (the question of dischargeability is . . . preserved and, should there be any dispute, may be determined by the state courts in connection with proceedings to enforce the obligation).
"The determination of whether a debt is dischargeable is made pursuant to federal bankruptcy law." Lewis v. Lewis, supra, 35 Conn. App. 627, citing Forsdick v. Turgeon, 812 F.2d 801, 802 (2d Cir. 1987); In reCalhoun, 715 F.2d 1103, 1107 (6th Cir. 1983); In re Silberfein,138 B.R. 778, 780 (S.D.N.Y. 1992). "Although a bankruptcy judge may consult state law for guidance as to whether a debt is actually in the nature of alimony, maintenance or support, the determination is necessarily one premised upon federal bankruptcy law." Cook v. Bieluch
(In re Bieluch), 219 B.R. 14, 20 (Bankr. D.Conn. 1998); see also In reBalvich, supra, 135 B.R. 327, 333 ("whether or not an obligation represents non-dischargeable alimony within the context of § 523(a) (5) is a question of federal not state law"). "Thus, a debt could be in the nature of support under § 523(a)(5) even though it would not legally qualify as alimony or support under state law." (Internal quotation marks omitted; citation omitted.) In re Balvich, supra, 333. "By determining dischargeability with reference to federal bankruptcy law, we ensure uniformity of treatment of debtors who are similarly situated." In re Seibert, 914 F.2d 102, 106 (7th Cir. 1990). This court is, then, obliged to apply federal bankruptcy law in deciding the case before it.
"Congress drafted the Bankruptcy Code to effectuate the general purpose of providing debtors with a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." (Internal quotation marks omitted; citations omitted.) T I Federal Credit Union v. Delbonis, 72 F.3d 921, 937 (1st
Cir. 1995). "Chapter 7 . . . reflects that purpose by entitling debtors to a discharge of all debts except obligations . . . specifically except[ed] from discharge." (Internal quotation marks omitted; citation CT Page 8109 omitted.) Id.
The Bankruptcy Code defines a debt as "liability on a claim".11 U.S.C. § 101 (12) (1993); King v. King (In re King), 214 B.R. 69,74 (Bankr. D.Conn. 1997). A "claim" is a "right to payment . . . or . . . right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. . . ."11 U.S.C. § 101(5) (1993); In re King, supra,214 B.R. 74. Only debts that arise prior to the petition date are eligible for discharge in a voluntary case under Chapter 7.In re King, supra, 74.
In the present case, the court, in the judgment of dissolution of marriage dated November 4, 1998, ordered the defendant to pay the cost of the plaintiffs automobile insurance for two years. The court also ruled on March 25, 1999, that the defendant would be required to reimburse the plaintiff for the portion of her tax refund that was seized by the IRS. This court finds that the plaintiff has a right to payment for which the defendant is liable and that the debt requirement of the Bankruptcy Code is satisfied. Furthermore, these debts arose prior to the defendant's September 14, 1999, bankruptcy petition. Hence, these debts were discharged unless they are among those specifically excepted from discharge.
The exceptions to discharge are enumerated in 11 U.S.C. § 523. Section 523 excepts from discharge, inter alia, any debt
 to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that . . . such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support. . . ."
11 U.S.C. § 523 (a)(5). "Thus, the only substantive inquiry required in assessing the dischargeability of the [IRS debt and the agreement to pay for the automobile insurance] is whether such [debts are] in the "nature of alimony, maintenance or support." In re Bieluch, supra,219 B.R. 20.
"The party opposing the bankruptcy discharge of a particular debt bears CT Page 8110 the burden of proving the requirements of the relevant subsection of Section 523(a) by a preponderance of the evidence." In re Bieluch, supra, 219 B.R. 18, citing Grogan v. Gamer, 498 U.S. 279, 287-88,111 S.Ct. 654, 659-60, 112 L.Ed.2d 755 (1991); In re Thirtyacre, 36 F.3d 697
(7th Cir. 1994). In the present case, the plaintiff thus has the burden of proving by a preponderance of the evidence that the debt to the IRS and the agreement to pay for the plaintiffs automobile insurance are debts in the nature of alimony, support, or maintenance under federal bankruptcy law.
"[T]his court's task under Section 523(a)(5) is to determine whether the Connecticut Superior Court created the obligation for the maintenance or support of the Defendant. . . ." Cuseo v. Cuseo, (In re Cuseo).242 B.R. 114, 119 (Bankr.D.Conn.1999); In re King, supra, 214 B.R. 74. "A debt to a former spouse is `in the nature of alimony, maintenance or support' to the extent that it is intended, and in fact functions, to provide support to the former spouse." In re Bieluch, supra, 219 B.R. 20. In making this determination, bankruptcy courts customarily looked at whether an obligation "was intended either (1) to address the unequal earning capacities of the parties-suggesting a nondischargeable `support' purpose, or (2) to allocate the marital assets-suggesting a dischargeable property division." In re Bieluch, supra, 20; In re King, supra, 75.
"Under bankruptcy law, the intent of the parties at the time a separation agreement is executed determines whether a payment pursuant to the agreement is alimony, support or maintenance within the meaning of section 523(a)(5)." Brody v. Brody (In re Brody), 3 F.3d 35, 38 (2d Cir. 1993). Courts have devised multiple factor tests to aid in determining whether an obligation was intended to be in the nature of alimony, support or maintenance or, instead, a dischargeable award of property. See Lewis v. Lewis, supra, 35 Conn. App. 627-28; In re Bieluch, supra, 219 B.R. 20. However, "[[c]onsideration of such factors must occur in a tightly circumscribed evidentiary context." In reBieluch, supra, 20; In re King, supra, 214 B.R. 75. "[I]nitial recourse must be made to the language of the divorce decree. . . . If the intention and effect of the award is not clear from the decree itself, then the Bankruptcy Court may look beyond the four corners of the decree. . . ." (Citations omitted; internal quotation marks omitted.) Inre Bieluch, supra, 20; In re King, supra, 75. "All evidence, direct or circumstantial, which tends to illuminate the parties' subjective intent is relevant." In re Brody, supra, 3 F.3d 38. In the present case, the judgment of dissolution, in referring to the written stipulation executed by the parties, specifically states that the parties mutually waived alimony. At the same time, the judgment provides that the defendant shall be obliged to pay funds sufficient for the plaintiffs automobile insurance for two years from the date of the decree. Thus, while this CT Page 8111 court should give considerable deference to the stated mutual waiver of alimony, the intention and effect of the obligation imposed upon the defendant to pay funds sufficient for the plaintiffs automobile insurance are not sufficiently clear that the court's analysis may end there.
In Lewis v. Lewis, the question on appeal was whether the trial court properly characterized a court-ordered payment of $50,000 as a debt in the nature of alimony, support, or maintenance that could not be discharged in bankruptcy. In determining that question the court considered five factors as relevant: "(1) whether the obligation terminates on the death or remarriage of the debtor's spouse; (2) whether the payments appear to balance disparate income; (3) whether the payments are made to a third party or the ex-spouse; (4) whether the obligation terminates at the end of a specified event (i.e. children are out of school, debt is satisfied, etc.); and (5) what was the intent of the parties." Lewis v. Lewis, supra, 35 Conn. App. 628.
The parties in Lewis were married only two years. As both parties were employed and self-supporting, the dissolution court ordered that neither party would receive alimony. Id., 623. In determining that the trial court had not erred in its characterization of the $50,000 debt as alimony, support, or maintenance, the Appellate Court highlighted certain evidence considered by the trial court: (1) the purpose of a property settlement is to unscramble property ownership, but in Lewis, there was no property ownership to unscramble; (2) while the dissolution decree stated that no alimony was to be awarded, during the hearing on the proposed decree a colloquy occurred which suggested that the plaintiff intended the $50,000 payment to be in the nature of alimony; (3) the parties' prenuptial agreement provided that the plaintiff had the right to periodic alimony; and (4) the dissolution decree allowed the plaintiff who had no house or car of her own, to use the defendant's until the $50,000 payment was made, hence linking the payment to a necessity of life.
Bankruptcy courts have applied similar tests. The United States Bankruptcy Court for the District of Connecticut has considered the following factors: "(1) the label given the obligation in the decree, (2) the form and placement of the obligation in the decree, (3) whether the obligation terminates on death, remarriage, etc., (4) the economic disparity between the parties, (5) the length of the marriage, (6) the presence of minor children, (7) whether a traditional support award would have been adequate in the absence of the obligation in question, (8) the age, employability, and educational level of the parties, and (9) the financial resources, actual or potential, of each spouse." In reBieluch, supra, 219 B.R. 20; see also In re King, supra, 214 B.R. 75. CT Page 8112
The issue in Bieluch was whether a debtor's obligation to make periodic payments reimbursing a former wife for legal expenses was in the nature of support and hence nondischargeable. See In re Bieluch, supra,219 B.R. 14. There, the plaintiff did not request a formal award of alimony but rather a lump sum of $80,000.00 payable in the amount of $500.00 per month to be ordered as periodic alimony. Id., 17. While the decree did not specifically denote the award as "periodic alimony." it characterized the award as a contribution to the plaintiffs counsel fees; Id.; and "in the nature of alimony." Id., 21. Except for a part of the award found to be punitive in nature, the court held that the plaintiff met the burden of demonstrating that the award "was in the nature of alimony because it was reasonably intended, and would in fact have functioned, to support her." Id., 21.
ANALYSIS
A. The automobile insurance.
This court concludes that the defendant's obligation to pay for the plaintiffs automobile insurance for two years was "in the nature of alimony support and maintenance," rather than a distribution of property. Although both parties formally waived any award of alimony, they also did not distribute any property to each other. The defendant admits that he agreed to pay the $200 per month for the automobile insurance for two years in exchange for the plaintiffs waiver of alimony. While that waiver ensured that the plaintiff could never seek an increase in that award — since under Connecticut law alimony waived at the time of the dissolution can never again be claimed; see Passamano v.Passamano. 228 Conn. 85, 90 n. 7, 634 A.2d 891 (1993); such a waiver does not end the inquiry as to whether, under federal law, the automobile insurance payments were "in the nature" of alimony, support, and maintenance. See In re Brody, supra, 3 F.3d 38.
In balancing the key factors for consideration, the following weigh in favor of regarding the insurance obligation as in the nature of alimony, support, and maintenance:
 1. There were no significant assets to unscramble as would suggest a property distribution. See Lewis v. Lewis, supra, 35 Conn. App. 628.
 2. Nor was there an order that payments were to be made from a specific fund or res, as would indicate an intent to unscramble assets or a property settlement. In Re King, supra. 214 B.R. 69, 76.
 3. A traditional support award with time limits would have had the identical effect as this unspecified two-year obligation to pay for CT Page 8113 the automobile insurance Id 75; see also In re Bieluch, supra, 219 B.R. 20.
 4. That the defendant expressly agreed to pay for motor vehicle insurance shows he knew the payments would help the plaintiff maintain a means of transportation. The court in Lewis expressly recognized transportation as one of the necessities of life, and held that an obligation to provide for such a necessity suggested that a payment was in the nature of alimony, support and maintenance, rather than a property distribution. Lewis v. Lewis, supra, 35 Conn. App. 630.
 5. The final and key factor is the significant disparity between the parties' income and their respective abilities to meet their individual daily needs. The defendant earned significantly more than the plaintiff. The husband's weekly income of $590.12 at the time of the dissolution was more than $200 per week greater than the wife's weekly income then of $377.12. Her financial affidavit filed at the time of the divorce indicates that she needed wrist surgery that would require a several-month recuperation period during which she could not work her second job. Her net weekly income after she could resume the second job, however, would be $447.85, still almost $150 per week less than her husband's income. The defendant's net income exceeded his weekly expenses by $36.74, while the plaintiffs net weekly income at the time of the dissolution was going to be $70 less than her weekly expenses during her several-month recuperation from wrist surgery. Even after she resumed her second job, her income would still be a little less than her weekly expenses.
6. The parties had been married for over twenty-five years.
On the defendant's side of the ledger are the facts that (1) both parties expressly waived alimony; (2) the obligation to pay the automobile insurance was not labeled or identified in any way so as to suggest it was intended as alimony or support; and (3) the obligation would not, like alimony, terminate upon remarriage of the plaintiff (although it would, presumably, have terminated upon her death, unlike a property distribution, for there would have been no need to maintain her motor vehicle insurance after her death).
In balancing all these factors, and accepting the testimony of the plaintiff at this hearing that she had always regarded the payments for motor vehicle insurance as contributing to her support, the court cannot conclude that these payments were ever intended as a property distribution. Weighing a 25-year marriage, the significant disparity in incomes, and the fact that the defendant's earnings exceeded his weekly CT Page 8114 expenses while the plaintiffs expenses exceed her income, together with the other factors, suggests the contrary, despite the language of the decree itself. By not identifying these payments as alimony, the parties avoided any risk to the defendant that a court could order an increase in their amount or duration while simultaneously meeting the plaintiffs daily needs. Using some of the defendant's greater income for a limited time period to help pay for a necessity of life would likely have been intended to help the plaintiff get on her financial feet, particularly during and immediately after a recuperation period of uncertain length when the gap between her income and expenses would be greatest. The court thus concludes that the defendant's obligation to pay for the plaintiffs motor vehicle insurance was, for purposes of federal bankruptcy law, in the nature of alimony, support, and maintenance, and therefore nondischargeable.
B. The IRS debt.
Since the parties filed a joint tax return for the 1997 tax year, any tax liability for that year was the obligation of each. Neither party listed any 1997 tax liability to the IRS in their financial affidavits at the time of the dissolution. In February 1998, the plaintiff moved to open the judgment of dissolution because she had learned that the IRS was claiming both owed a tax bill due for 1997. In that motion, she alleged that the tax debt resulted from the defendant's failure to pay income taxes for his self-employment income. The defendant's response to this motion admitted that most of this debt was his but claimed some to be the plaintiffs responsibility. By the time of the hearing on this motion, the IRS had already seized the amount of the debt due out of a tax refund due to the plaintiff. After the hearing, the Superior Court (Wiese, J.) held that the defendant husband was responsible for most of the tax debt and ordered him to reimburse the plaintiff, at the rate of $50 per week, for the entire amount taken by the IRS from her. The court expressly declined to open the judgment and issued its decision under the terms of the original dissolution that had assigned each party responsible for its own debts.
Under these facts, the so-called IRS debt was thus a debt owed by the defendant to the plaintiff to reimburse her for payments made by her to the IRS on his behalf. In determining the dischargeability of a post-dissolution domestic relations obligation, the court applies the same analysis and factors as in assessing obligations created at the time of the dissolution. See generally In re Cuseo, supra, 242 B.R. 114. Nothing about this debt, however, has the inherent nature or character either of alimony, support, or maintenance or of an allocation of property. Whether a debt is a support obligation or part of a property settlement is a matter of federal bankruptcy law, not state law. In reCT Page 8115Bieluch, supra, 219 B.R. 20; Freyer v. Freyer (In re Freyer), 71 B.R. 912,916 (Bankr.S.D.N.Y. 1987). The court does not believe that the plaintiffs waiver of alimony at the time of the dissolution decree is conclusive as to the IRS debt because at the time of that waiver the plaintiff had omitted the debt from his financial affidavit; hence hers was not a knowing and intentional relinquishment or waiver of a claim of alimony, support, or maintenance with regard to this debt. The court must therefore look again to the various factors identified by the courts to decide how to characterize this debt.
Although the key factor in determining whether a debt is a property or support obligation is usually the parties' intent at the time of the dissolution or court order, that factor has virtually no weight as to the IRS debt for two reasons: (a) the debt was not allocated in the dissolution judgment because the defendant failed to disclose it; and (b) the Superior Court's later allocation of the debt exclusively to the defendant did not result from an agreement of the parties, but after a contested hearing. When an obligation arises from a court's order after a litigated hearing, as opposed to a settlement between the parties, one looks to the intent of the court in entering the order to determine its character. Tavella v. Edwards (In re Edwards), 172 B.R. 505, 512 (Bankr. D.Conn. 1994).
In Balvich v. Balvich (In re Balvich), 135 B.R. 323 (N.D.Ind. 1991), the United States District Court affirmed a bankruptcy court finding of non-dischargeabiiity where a dissolution court had ordered the appellant responsible for all tax liability incurred by the parties in 1988 and the appellant stipulated that he would assume such liability. The District Court focused on the two factors the bankruptcy court considered in making its determination. First, the wife calculated the her monetary needs and accordingly negotiated in reliance upon the stipulation. Second, there was no evidence that the husband received property in exchange for paying the taxes Id., 326.
The defendant in the present case did not stipulate that he would pay any income tax owed by the parties for 1997; however, the stipulation incorporated into the dissolution explicitly states that each party is responsible for its respective debts. The parties negotiated and executed the stipulation based on the belief that they would not be responsible for any expenses other than their own. Had the plaintiff realized that she would be responsible for additional debt, she may have needed additional support from the defendant.
Regarding the issue of whether the defendant received property in exchange for paying the taxes, it is unlikely that such an exchange would have occurred here in view of the fact that the parties had simply CT Page 8116 assumed liability for their own debts. Furthermore there simply wasn't any property for the parties to exchange.
In weighing other factors to assess how the court regarded or intended the tax debt, the court finds the following:
 1. One cannot determine from the debt itself or the court's order assigning the debt whether the defendant's obligation to reimburse the plaintiff for the IRS debt she paid would terminate upon her death or remarriage. That determination must instead flow from whether the debt itself is characterized as in the nature of alimony, support and maintenance or as a property distribution.
 2. Nothing in how the parties or the court characterized the reimbursement obligation aids now in determining its nature. Here, as in the recent case of In re Cuseo, it is obvious that the court entered this order without consideration of bankruptcy and the possible dischargeability of this obligation. In re Cuseo, supra. 114 B.R. 120. The inability to determine how the court regarded the reimbursement obligation would seem to weigh in the defendant's favor since it means that one cannot infer from the language of the order that the trial court intended to create a non-dischargeable alimony or support obligation.
 3. The debt was payable in periodic installments directly to the plaintiff, two factors favoring its characterization as in the nature of alimony, support, and maintenance. In re Freyer, supra, 71 B.R. 919.
 4. Virtually all financial orders for the benefit of a particular party have the effect, at least indirectly, of assisting in their support. Id., 916. In Freyer, the court thus noted that the key consideration should be whether any income provided by a court's order would be directed at meeting basic daily needs Id., 918. From the facts of this case it also seems obvious that the intent of the trial court in ordering the reimbursement obligation was to maintain the financial status quo between the parties. The court's order that the defendant reimburse the plaintiff would have had the effect, in view of the plaintiffs relatively limited income and the gap between her income and expenses, of providing additional income to ensure that her daily needs were met. (There is not, however, any evidence to show that this amount would have had the effect of providing a home for a spouse and minor children.)
 5. As pointed out earlier, the parties had significantly different income and expense situations. First, their net weekly incomes were CT Page 8117 different. Second, the defendant's net income exceeded his weekly expenses by $36.74. The plaintiffs net weekly income, on the other hand, was going to be $70 less than her weekly expenses during her recuperation from wrist surgery and even after she resumed her second job her expenses would still exceed her income. Taking this financial disparity together with the fact of a twenty-five year marriage and a period of reduced income for the plaintiff during her recuperation suggests that the court would have regarded the reimbursement obligation as intending to balance disparate incomes and to aid the plaintiff in meeting the daily needs for which her own income was insufficient.
Although the balancing of these factors on the IRS debt is a closer call than on the motor vehicle insurance, the court finds that they tilt towards finding that the reimbursement obligation was intended, like the motor vehicle insurance obligation, to aid this plaintiff of limited income to get on her financial feet after a twenty-five year marriage followed by a divorce, particularly in view of the fact that her medical condition was going to dictate a temporary diminution of her already limited income while she recovered from surgery. Additionally, the plaintiff executed the waiver of alimony in the belief that the only liabilities she would be responsible for were her own. Had she known that she would be responsible for additional debts, she would have found it necessary, given her financial position, to seek further support from the defendant.
CONCLUSION
While the court finds that both the automobile insurance and IRS debts are in the nature of alimony, maintenance and support pursuant to federal bankruptcy law and, hence, nondischargeable, the defendant's belief that the debts were discharged in bankruptcy was reasonable. "It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." Marcil v. Marcil, 4 Conn. App. 403, 405, 494 A.2d 620 (1985). Accordingly, the court denies the plaintiffs motion for contempt.
The court intends to enter orders for enforcing its decision here. Such orders will specify the terms under which the defendant must pay the amounts still due for the plaintiffs automobile insurance pursuant to stipulation as well as the balance of the IRS debt due and owing. Before doing so, however, the court seeks the advice of the parties as to the specific orders the court should enter for implementing its decision herein. Further, the court seeks the views of the parties on the appropriateness of awarding the plaintiff attorneys' fees, costs and lost work time. The parties should submit written proposals to the court CT Page 8118 within thirty days of the filing of this decision. The plaintiff should submit evidence supporting her claims for attorneys' fees, costs and lost work time with her written proposal.
SO ORDERED.
BY THE COURT
Stephen F. Frazzini, J.